UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

CYNTHIA SAUNDERS, et al.,

                    Plaintiffs,

        vs.

THE CITY OF NEW YORK, et al.,

                    Defendants.

----------------------------------------------------------------x

07 Civ. 830 (SAS)(KNF)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED FACTS AND PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS PURSUANT TO LOCAL CIVIL RULE 56.1**

        Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern and Eastern Districts of New York, plaintiffs Cynthia Saunders, et al. (hereafter "plaintiffs") respond to the Statement of Undisputed Facts of defendants, the City of New York and the Department of Education of the City of New York (collectively the "DOE", the "City" or "defendants") as follows.

        1.     Deny the facts as alleged in Paragraph 1 of defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("City's 56.1")  On or about February 2, 2007, the named plaintiffs, Cynthia Saunders ("Saunders"), Rose Ann H. Guerrieri ("Guerrieri"), Francine B. Palmieri ("Palmieri"), Rosemary Roman ("Roman"), June Wanda McMillan ("McMillan"), Lydia P. Irby ("Irby"), Linda F. Sanders ("Sanders"), Yolanda Ayala ("Ayala"), Chee Chee Kung ("Kung"), Lilly Chu ("Chu"), Henry Kinsey ("Kinsey"), Denise A. Gordon ("Gordon"), and Virginia Marie Temple ("Temple") (hereinafter the "Named Plaintiffs"), filed the Complaint in this matter.  In the Complaint (the "Compl."), the Named Plaintiffs alleged four (4) causes of action as follows: (1) that they work in excess of forty (40) hours per workweek and defendants failed and refused to pay them in cash at the rate of time and one-half for hours worked over forty hours in a workweek; (2) that defendants willfully failed and refused to pay them

compensatory time for hours worked between 35 and 40 hours in a workweek; (3) that defendants converted their compensatory time to sick leave after 90 days or prevented them from utilizing their compensatory time; and (4) that defendants failed to post official notices of employees' right to be paid in cash and misinformed and actively discouraged them from exercising their rights to receive cash at the rate of time and one half for hours worked in excess of 40 hours per workweek. (Compl. ¶¶ 28, 32-39)

The Named Plaintiffs filed this action on behalf of themselves and in their representative capacity on behalf of approximately 1450 current and former employees who are similarly situated. (Compl. ¶ 2) The Court ordered opt-ins to be filed by June 11, 2007. Six people filed consent to opt-in after the June 11, 2007 deadline. By letter dated June 19, 2007, plaintiffs requested that the Court excuse the late filings of those six individuals. The Court granted plaintiffs' request. (See the Court's Order dated June 25, 2007, annexed as Exhibit ("Exh.") A to the Affidavit of Ivan D. Smith, sworn to September 9, 2008 ("Smith Aff.")) On or about July 14, 2008, plaintiffs withdrew their claim that defendants converted compensatory time to sick leave after 90 days.

2.      Admit the facts as alleged in Paragraph 2 of the City's 56.1.

3.      Admit the facts as alleged in Paragraph 3 of the City's 56.1.

4.      Admit the facts as alleged in Paragraph 4 of the City's 56.1.

5.      Admit the facts as alleged in Paragraph 5 of the City's 56.1.

6.      Admit the facts as alleged in Paragraph 6 of the City's 56.1.

7.      Deny the facts as alleged in Paragraph 7 of the City's 56.1. Depending on years of service, plaintiffs accrue between 15 and 27 days of annual leave time.    See Parent

Coordinator Human Resources Guide ("PC HR Guide") at 10, annexed as Exh. A to the Declaration of Diana Goell Voigt, dated August 18, 2008 ("Voigt Decl.")

8.      Admit the facts as alleged in Paragraph 8 of the City's 56.1.

9.      Admit the facts as alleged in Paragraph 9 of the City's 56.1.

10.     Admit the facts as alleged in Paragraph 10 of the City's 56.1.

11.     Admit the facts as alleged in Paragraph 11 of the City's 56.1.

12.     Admit the facts as alleged in Paragraph 12 of the City's 56.1.

13.     Admit the facts as alleged in Paragraph 13 of the City's 56.1.

14.     Admit the facts as alleged in Paragraph 14 of the City's 56.1

15.     Deny the facts as alleged in Paragraph 15 of the City's 56.1. Some principals did not allow their parent coordinators ("PCs") to work a flexible schedule because they wanted them to be available at certain times. (See transcript of deposition of Caress Deville-Hughes, taken May 8, 2008 ("Hughes Dep.") at 29:6-10, excerpts of which are annexed as Exh. C to Smith Aff.; see also transcript of deposition of Denise A. Gordon, taken December 5, 2007 ("Gordon Dep.") at 33:5-11, excerpts of which are annexed as Exh. B to Smith Aff.) Further, the schedule of a PC is set once the principal hires the PC. (See transcript of deposition of Sacha Ingles, taken May 9, 2008 ("Ingles Dep.") at 116:15-117:10, excerpts of which are annexed as Exh. C to Smith Aff.)

16.     Admit the facts as alleged in Paragraph 16 of the City's 56.1.

17.     Deny the facts as alleged in Paragraph 17 of the City's 56.1. Some parent support officers ("PSOs") did not work a flexible schedule which caused them to work many hours beyond their regularly scheduled times. (See Gordon Dep. 28:24-29:7, 33:7-11)

18.     Admit the facts as alleged in Paragraph 18 of the City's 56.1.

19.     Admit the facts as alleged in Paragraph 19 of the City's 56.1.

20.     Admit the facts as alleged in Paragraph 20 of the City's 56.1.

21.     Admit the facts as alleged in Paragraph 21 of the City's 56.1.

22.     Admit the facts as alleged in Paragraph 22 of the City's 56.1.

23.     Admit the facts as alleged in Paragraph 23 of the City's 56.1.

24.     Admit the facts as alleged in Paragraph 24 of the City's 56.1.

25.     Admit the facts as alleged in Paragraph 25 of the City's 56.1.

26.     Admit the facts as alleged in Paragraph 26 of the City's 56.1.

27.     Admit the facts as alleged in Paragraph 27 of the City's 56.1

28.     Admit the facts as alleged in Paragraph 28 of the City's 56.1.

29.     Admit the facts as alleged in Paragraph 29 of the City's 56.1.

30.     Admit the facts as alleged in Paragraph 30 of the City's 56.1.

31.     Admit the facts as alleged in Paragraph 31 of the City's 56.1.

32.     Admit the facts as alleged in Paragraph 32 of the City's 56.1.

33.     Admit the facts as alleged in Paragraph 33 of the City's 56.1.

34.     Admit the facts as alleged in Paragraph 34 of the City's 56.1.

35.     Admit the facts as alleged in Paragraph 35 of the City's 56.1.

36.     Admit the facts as alleged in Paragraph 36 of the City's 56.1.

37.     Deny the facts as alleged in Paragraph 37 of the City's 56.1.   The form "Verification of Compensatory Time or Paid Overtime Performed by Parent Coordinator" was not the only way in which the PCs recorded their time, including the hours worked over forty (40) in a workweek.   Prior to Cybershift, the PCs recorded their time, including overtime, on time sheets and time cards, which they and their principals signed and which were submitted to

the school's payroll secretary.    (See transcript of deposition of Cynthia Saunders, taken November 19, 2007 ("Saunders Dep.") at 66:15-67:19, excerpts of which are annexed as Exh. B to Smith Aff.)  Plaintiffs were not required to fill out any separate form in addition to their time cards when working beyond their regularly scheduled hours.  (See transcript of deposition of Francine B. Palmieri, taken November 20, 2007 ("Palmieri Dep.") at 40:13-16, excerpts of which are annexed as Exh. B to Smith Aff.)

38.    Admit the facts as alleged in Paragraph 38 of the City's 56.1.

39.    Admit the facts as alleged in Paragraph 39 of the City's 56.1.

40.    Admit the facts as alleged in Paragraph 40 of the City's 56.1.

41.    Admit the facts as alleged in Paragraph 41 of the City's 56.1.

42.    Admit the facts as alleged in Paragraph 42 of the City's 56.1.

43.    Deny the allegations contained in Paragraph 43 of the City's 56.1.    Some plaintiffs were not told that their workweek was 35 hours and to use a flexible work schedule. Gordon testified that her shift was not tied to 8:00 a.m. to 4:00 p.m., not to make plans during the weekdays because she was expected to work until 8:00 p.m. or 9:00 p.m. certain nights, and to expect to work Saturdays and to consider the job her bride or groom. (Gordon Dep. 33:5-34:3)

44.    Admit the facts as alleged in Paragraph 44 of the City's 56.1.

45.    Admit the facts as alleged in Paragraph 45 of the City's 56.1.

46.    Deny the facts as alleged in Paragraph 46 of the City's 56.1. The record does not indicate whether plaintiffs attended the regional meetings defendants referred to herein.   In addition, some plaintiffs were not told by their supervisors to work a flexible schedule. (See Gordon Dep. 33:24-34:3) PC, June McMillan, asked her principal to place her on Flex-Time status in Cybershift so that she could work a flexible schedule and accurately record her time.

Her principal refused. As a result, Ms. McMillan was improperly docked time for lateness and was not accurately credited for time worked. (Affidavit of June McMillan ("McMillan Aff.") at ¶ 6 and Exh. A annexed thereto)

47.    Deny the facts as alleged in Paragraph 47 of the City's 56.1. Plaintiffs were not required to obtain prior approval from their principals to work beyond thirty-five hours in a workweek. (See Saunders Dep. 89:13-25; see also transcript of deposition of Rose Ann H. Guerrieri, taken November 19, 2007 ("Guerrieri Dep.") at 36:16-25, 40:7-17, excerpts of which are annexed as Exh. B to Smith Aff.)

48.    Deny the facts as alleged in Paragraph 48 of the City's 56.1. Plaintiffs were not always required to obtain either written approval or pre-approval before working overtime. Plaintiff Lilly Chu testified that she received oral approval from her principal when she had to work beyond thirty-five hours in a workweek. (Transcript of the deposition of Lilly Chu, taken December 4, 2007 ("Chu Dep.") at 47:6-12, 53:18-54:12, excerpts of which are annexed as Exh. B to Smith Aff.) Sanders testified that she was not required to obtain prior approval for evening meetings. (Transcript of the deposition of Linda F. Sanders, taken December 4, 2007 ("Sanders Dep.") at 59:6-20, excerpts of which are annexed as Exh. B to Smith Aff.) Palmieri testified that she does not need to obtain prior approval when working beyond her regularly scheduled tour. (Palmieri Dep. 40:9-16) Saunders testified that her superiors knew that she would work over forty hours because of a PA meeting, which she was required to attend. (Saunders Dep. 89:13-25) Guerrieri testified that she did not obtain prior approval when working beyond her regularly scheduled hours. (Guerrieri Dep. 36:16-25, 37:12-38:11, 40:7-17)

49.    Deny the facts as alleged in Paragraph 49 of the City's 56.1. During the period of 2003 to 2007, Gordon worked in excess of forty hours in many weeks. Her hours were not

flexible. (Gordon Dep. 33:23-34:3)  Further, she was not required to obtain pre-approval from her regional director and was not paid in compensatory time or otherwise. (Gordon Dep. 35:8-13, 43:2-44:4)  In addition, the DOE policy requires that PSOs be paid in cash for hours worked in excess of thirty five hours in a workweek. (See transcript of deposition of Elizabeth Knipfing, taken December 13, 2007 ("Knipfing Dep.") at 110:4-8, excerpts of which are annexed as Exh. C to Smith Aff.; see also transcript of deposition of Julio Angel Lopez, taken December 7, 2007 ("Lopez Dep.") at 49:25-50:11, 72:14-17, excerpts of which are annexed as Exh. C to Smith Aff.)

50.      Deny the facts as alleged in Paragraph 50 of the City's 56.1.  PSOs were not required to obtain pre-approval from their respective Regional Director before working over 40 hours in a workweek. (See Gordon Dep. 35:8-13)

51.      Deny the facts as alleged in Paragraph 51 of the City's 56.1.  Some plaintiffs testified that they were not required to obtain prior approval before working over 40 hours. (See Gordon Dep. 35:8-13; Guerrieri Dep. 36:16-25, 37:12-38:11, 40:7-17; Saunders Dep. 89:13-25)

52.      Admit the facts as alleged in Paragraph 52 of the City's 56.1.

53.      Deny the facts as alleged in Paragraph 53 of the City's 56.1 as to all plaintiffs. Gordon testified when she complained to her superiors about the DOE's failure to pay her for overtime, she was told they would look into it. (Gordon Dep. 43:9-23, 46:6-21)

54.      Admit the facts as alleged in Paragraph 54 of the City's 56.1.

55.      Deny the allegations contained in Paragraph 55 of the City's 56.1 that DOE policy and practice required PCs and PSOs to seek pre-approval from their respective principals to work an additional five hours and receive compensatory time.  Many PCs and PSOs were not required to seek pre-approval from their respective supervisors to work beyond thirty-five hours per week.

(See Saunders Dep. 89:13-25; Guerrieri Dep. 36:16-25, 37:12-38:11, 40:7-17; see also time and attendance records for Virginia Temple showing that overtime was approved after it was worked, which are annexed as Exh. D to Smith Aff.)

56. Admit the facts as alleged in Paragraph 56 of the City's 56.1.

57. Deny the facts as alleged in Paragraph 57 of the City's 56.1 as to plaintiffs' knowledge concerning defendants' possession of very little or no money for overtime compensation for hours worked over 40 in a workweek. There is no evidence in the record that plaintiffs were privy to the DOE's budget allocations. Further, a school principal has discretion to use or schedule funds the DOE allocates under the instructional programs for any program he or she deems appropriate for the school. (See transcript of the deposition of Susan Olds, taken December 7, 2007 ("Olds Dep.") at 27:25-28:7, excerpts of which are annexed as Exh. C to Smith Aff.)

58. Admit the facts as alleged in Paragraph 58 of the City's 56.1.

59. Admit the facts as alleged in Paragraph 59 of the City's 56.1.

60. Admit the facts as alleged in Paragraph 60 of the City's 56.1.

61. Deny the facts as alleged in Paragraph 61 of the City's 56.1 that Saunders spoke to the Union. There is no evidence in the record to indicate whether in 2004, Saunders spoke with an official of the Union concerning payment of compensatory time instead of cash for overtime hours, so that knowledge can be imputed to the Union.

62. Deny the facts as alleged in Paragraph 62 of the City's 56.1. Under DOE's Cybershift program, when a PC takes a vacation day off, is late, or leaves early, that time is subtracted first from the individual's compensatory time bank. (See Knipfing Dep. 27:11-20, 28:13-17, 34:16-19, 35;10-13, 105:3-16; see also Lopez Dep. 38:10-14) The implication of this

practice is that "one cannot examine the comp [compensatory] data and draw any conclusions about its *voluntary* usage." (See Declaration of Dr. Louis R. Lanier, sworn to September 8, 2008 ("Lanier Decl.") at ¶ 4, which is annexed as Exh. E to Smith Aff.) Dr. Erath's comparisons of accrual and usage of compensatory time during July and August, prime vacation months, is a glaring example of how his analysis does not take into account whether the usage was for compensatory time as opposed to annual leave time based upon DOE's cascading practice. Moreover, the bank of accrued compensatory time never falls below zero. Therefore, if compensatory time is being used by an employee, then it must be because that employee has a positive bank of accrued compensatory time. Thus, the observation that an employee used more compensatory time than he or she accrued during an arbitrary time period cannot mean that the employee used more compensatory time than he or she had available. (Lanier Decl. ¶¶ 4-6, 9)

63.    Admit the facts as alleged in Paragraph 63 of the City's 56.1.

64.    Admit the facts as alleged in Paragraph 64 of the City's 56.1.

65.    Deny the facts as alleged in Paragraph 65 of the City's 56.1.  Only Saunders testified that she told the union "maybe" in 2004 that she was receiving compensatory time instead of cash. (Saunders Dep. 87:15-88:12)

66.    Admit the facts as alleged in Paragraph 66 of the City's 56.1.

67.    Admit the facts as alleged in Paragraph 67 of the City's 56.1.

68.    Admit the facts as alleged in Paragraph 68 of the City's 56.1.

69.    Admits the facts as alleged in Paragraph 69 of the City's 56.1.

70.    Admit the facts as alleged in Paragraph 70 of the City's 56.1.

71.    Admit the facts as alleged in Paragraph 71 of the City's 56.1.

72.     Deny the facts as alleged in Paragraph 72 of the City's 56.1.  Dr Erath admits in his Declaration that he only reviewed the Cybershift data from 2005-2008 and not the other electronic data bases produced in this matter. (See Declaration of Dr. Christopher Erath sworn to August 18, 2008 ("Erath Decl.") at ¶ 5, which is annexed to Voigt Decl.)  A comparable analysis using the available data for all plaintiffs in all time periods in which data is available shows that accrual exceeded usage by 4,464 hours.  (Lanier Decl. ¶ 8 and Exhibit A attached thereto)

73.     Deny the facts as alleged in Paragraph 73 of the City's 56.1.  Under DOE's Cybershift program, when a PC takes a vacation day, is late, or leaves early, that time is subtracted first from the individual's compensatory time bank. (See Knipfing Dep. 27:11-20, 28:13-17, 34:16-19, 35;10-13, 105:3-16; see also Lopez Dep. 38:10-14)  The implication of this practice is that "one cannot examine the comp [compensatory] data and draw any conclusions about its *voluntary* usage." (Lanier Decl. ¶¶ 4-6, 9)

74.     Deny the facts as alleged in Paragraph 74 of the City's 56.1.  The DOE's practice of cascading accrued time such as vacation time through the compensatory time bank first, means that there is no way to determine whether usage was for annual leave time or compensatory time.  Moreover, the bank of accrued compensatory time never falls below zero. Therefore, if compensatory time is being used by an employee, then it must be because that employee has a positive bank of accrued compensatory time.  Thus, the observation that an employee used more compensatory time than he or she accrued during an arbitrary time period cannot mean that the employee used more compensatory time than he or she had available. (Lanier Decl. ¶¶ 4-5, 9)

75.     Admit the facts as alleged in Paragraph 75 of the City's 56.1.

76.     Admit the facts as alleged in Paragraph 76 of the City's 56.1.

77.     Admit the facts as alleged in Paragraph 77 of the City's 56.1.

78.     Admit the facts as alleged in Paragraph 78 of the City's 56.1.

79.     Deny the facts as alleged in Paragraph 79 of the City's 56.1.  The DOE's practice of cascading accrued time such as vacation time through the compensatory time bank first, means that there is no way to determine whether usage for Ms. Saunders during that period was for annual leave time or compensatory time.  (Lanier Decl. ¶¶ 4, 9)  Usage does not indicate whether the DOE allowed her to use accrued compensatory time in a reasonable period after she requested the use.

80.     Admit the facts as alleged in Paragraph 80 of the City's 56.1.

81.     Admit the facts as alleged in Paragraph 81 of the City's 56.1.

82.     Admit the facts as alleged in Paragraph 82 of the City's 56.1.

83.     Deny the facts as alleged in Paragraph 83 of the City's 56.1.  The DOE's practice of cascading accrued time such as vacation time through the compensatory time bank first, means there is no way to know whether usage for Ms. Roman during that period was for annual leave time or compensatory time.  (Lanier Decl. ¶¶ 4, 9)

84.     Admit the facts as alleged in Paragraph 84 of the City's 56.1.

85.     Admit the facts as alleged in Paragraph 85 of the City's 56.1.

86.     Admit the facts as alleged in Paragraph 86 of the City's 56.1.

87.     Admit the facts as alleged in Paragraph 87 of the City's 56.1.

88.     Admit the facts as alleged in Paragraph 88 of the City's 56.1.

89.     Admits the facts as alleged in Paragraph 89 of the City's 56.1.

90.     Admit the facts as alleged in Paragraph 90 of the City's 56.1

91.     Deny the facts as alleged in Paragraph 91 of the City's 56.1. The DOE's practice of cascading accrued time such as vacation time through the compensatory time bank first, means that there is no way to determine whether usage for Ms. Gordon during that period was for annual leave time or compensatory time. (Lanier Decl. ¶¶ 4, 9)

92.     Admit the facts as alleged in Paragraph 92 of the City's 56.1.

93.     Deny the facts as alleged in Paragraph 93 of the City's 56.1.   Dr. Erath, defendants' expert, did not review all the electronic data bases for the relevant period.  He only reviewed electronic records from Cybershift data base for the period of March 2005 through the end of March 2008.  (Erath Decl. ¶ 5)  In the review of the Cybershift and TKS accrual data files for all the plaintiffs for the entire period, the data demonstrates that there were 684 weeks in which plaintiffs worked more than 40 hours, and 645 of those weeks were in pay periods where the plaintiffs were underpaid.  In other words, 94.3 percent of the weeks when plaintiffs worked overtime, they were underpaid in the corresponding pay period. (Lanier Decl. ¶ 11)

### PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS
### PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Local Civil Rule 56.1 of the United States District Court for the Southern and Eastern Districts of New York, plaintiffs submit this statement of material facts as to which they contend that are no genuine issues to be tried.

94.     The Department of Education of the City of New York is a governmental agency of defendant The City of New York.

95.     District Council 37 ("District Council 37" or the "Union") is a municipal union organized under the laws of the State of New York.

96.     District Council 37 represents the titles PCs and PSOs (or District Family Advocate) for collective bargaining purposes.

97.     The pertinent collective bargaining agreement between the Union and the DOE provides in relevant part:  If any provision of this Agreement is or shall at any time be contrary to law, then such provision shall not be applicable or performed or enforced, except to the extent permitted by law and any substitute action shall be subject to appropriate consultation and negotiation with the Union."  (Article XXIX, Conformity to Law – Saving Clause, which is annexed as Exh. F to Smith Aff.)

98.     The New York City Department of Education Rules and Regulations Governing Non-Pedagogical Administrative Employees (the "Rules") apply to PCs and PSOs.  The Rules explicitly provide in pertinent part that "Compensatory time may not be utilized for represented employees unless explicitly provided for in a collective bargaining agreement.  Division or office heads must obtain the consent of the non-represented employees covered by FLSA to accept compensatory time in lieu of cash payment for overtime worked in excess of forty (40) hours." (emphasis added) (Rules at 22, annexed as Exh. A to Voigt Decl.)

99.     The Union did not make any explicit agreement with the DOE to compensate PCs or PSOs in compensatory time in lieu of cash for hours worked over forty in a workweek. (Affidavit of Nola Booker sworn to September 9, 2008 ("Booker Aff.") at ¶¶ 6-9, which is annexed as Exh. G to Smith Aff.)

100.    The Union did not make any implicit agreement with the DOE to compensate PCs or PSOs in compensatory time in lieu of cash for hours worked over forty in a workweek. (Booker Aff. ¶¶ 6-9)

101.    The plaintiffs did not make any individual agreement with their principals to be paid in compensatory time in lieu of cash for hours worked over forty in a workweek. (Affidavit of Larry Davis sworn to September 8, 2008 ("Davis Aff.") at ¶¶ 5-6; McMillan Aff. at ¶ 6)

102.    The PC HR Guide states in relevant part: "Time above 40 is credited as time and one-half and must be compensated in cash through the payroll system. There is no provision to credit time worked above 40 hours in any given week as compensatory time." (PC HR Guide at 3)

103.    Defendants admit that they did not always pay PCs and PSOs in cash for hours worked over forty. (Transcript of court conference held on May 27, 2008 ("May Conference") at 5:23-8:8, excerpts of which are annexed as Exhibit H to Smith Aff.; see also Hughes Dep. 40:8-19; 61:1-23)

104.    Defendants admit that there are some plaintiffs who worked over forty hours in a workweek and did not receive cash compensation at the rate of time and one half. (May Conference at 5:23-6:1; transcript of the deposition of Henry Kinsey, taken on December 5, 2007 ("Kinsey Dep.") at 42:5-43:20, excerpts of which are annexed as Exh. B to Smith Aff.)

105.    Defendants were aware that federal law required them to pay PCs and PSOs in cash for hours worked in excess of forty hours in a workweek. (Knipfing Dep. 127:16-129:23)

106.    Defendants admit that DOE policy did not permit employees to be paid in compensatory time for hours worked in excess of forty hours in a workweek. Nonetheless, the DOE allowed school principals to attempt to arrange with individual PCs to be paid in compensatory time instead of cash for hours worked in excess of forty hours per week. (Knipfing Dep. 126:22-128-:21)

107.    Defendants admit that they did not post notices required by the United States Department of Labor to inform plaintiffs of their statutory right to compensation in cash at the rate of time and one half for hours worked beyond 40 hours in a workweek. (Letter from defendants to Court dated May 22, 2008, annexed as Exh. I to Smith Aff.)

108. At the start of her employment, Saunders' regularly scheduled work hours were 6:00 a.m. to 2:00 p.m. In 2005, Saunders' hours were changed to 7:00 a.m. to 3:00 p.m. (Saunders Dep. 49:17-50:3)

109. When working 6:00 a.m. to 2:00 p.m., Saunders would generally arrive at work at 5:30 a.m. and would punch in on the time clock. (Saunders Dep. 50:4-11; 51:5-15) She would normally take forty minutes for lunch. (Saunders Dep. 53:10-14; 53:24-54:13)

110. When working 7:00 a.m. to 3:00 p.m., Saunders normally arrived at work at 6:30 a.m. (Saunders Dep. 55:18-22)

111. Saunders' supervisors were aware that she habitually arrived before her regularly scheduled start time. (Saunders Dep. 62:7-25)

112. Plaintiffs worked before and after their regularly scheduled shifts and through lunch periods without compensation. (Saunders Dep. 49:11-16)

113. During her employment with the DOE as a PC, Saunders never received cash payment for hours worked beyond forty hours and did not receive compensation at the rate of time and one-half. (Saunders Dep. 69:1-70:3; 76:15-77:3)

114. On one or two occasions in 2006, Saunders requested to use accrued compensatory time and her requests were denied without offering her an alternate day to use instead of the date she had requested. (Saunders Dep. 79:25-80:1-20)

115. As of August 24, 2007, Gordon began to work in the title of District Family Advocate for Community School District 5. In July 2003, Gordon worked as a Regional Support Officer for Region 6 with the DOE. (Gordon Dep. 10:21-11:6; 12:14-16)

116.    As a regional PSO, Gordon's regularly scheduled hours were from 8:00 a.m. to 4:00 p.m. (Gordon Dep. 32:18-21) She punched a time clock and recorded her time on time cards and submitted them at the end of the two week period. (Gordon Dep. 34:7-20)

117.    Ms. Gordon testified that she did not take a lunch hour in her job. (Gordon Dep. 38:7-11)

118.    Currently, Ms. Gordon is assigned to the Harlem office and she is able to take lunch while at that location. (Gordon Dep. 40:5-10)

119.    Gordon worked beyond forty hours and, in some instances, only received compensatory time as compensation for the time worked over forty hours. She never received cash. (Gordon Dep. 54:20-55:4)

120.    Ms. McDonald was Gordon's supervisor from 2003-2007. (Gordon Dep. 61:17-19) Ms. Gordon testified that in 2005 she was sick at work and her supervisor denied her request to use accrued compensatory time. Also, in 2006, she was denied the use of accrued compensatory time to attend a friend's funeral. (Gordon Dep. 59:1-60:19)

121.    Defendants have not provided complete payroll and time data for all plaintiffs. (Expert report of Dr. Christopher Erath, dated July 14, 2008 ("Erath Report"), a copy of which is annexed as Exh. J to Smith Aff.)

122.    Dr. Louis Lanier, plaintiffs' expert, replicated the analysis of Dr. Erath, defendants' expert, concerning compensatory time accrual and usage. (Lanier Decl. ¶ 8) Dr. Lanier performed a comparable analysis using the electronic data bases for all the opt-in plaintiffs for all the time for which data were available.  Dr. Lanier's analysis showed that accrual for all the plaintiffs exceeded usage by 4,464 hours. (Lanier Decl. ¶ 8, and Exhibit A annexed thereto)

123.    According to Elizabeth Knipfing, Administrator for Business Operations for the DOE, the DOE's electronic or automatic time attendance system "CyberShift" became operational for PSOs in the fall of 2004 and for PCs in the fall of 2005.  (Knipfing Dep. 11:24-12:11)

124.    Employees who started the same day with DOE may have different start dates with Cybershift.  (Knipfing Dep. 58:17-59:21)

125.    The PSOs have badges that they are required to sign in and sign off using badge reader to record their attendance.  (Knipfing Dep. 15:7-12)

126.    PCs do not have badges and there are no badge readers at the schools.  (Knipfing Dep. 15:13-21)

127.    The schedule of each PC is pre-set in Cybershift.  The school's payroll secretary adjusts the pre-set times if the PC comes in earlier than the pre-set starting time or works later than the pre-set ending time.  (Knipfing Dep. 17:4-19:4)

128.    PCs earn accruals which are vacation and sick time that is awarded monthly, and comp time.  (Knipfing Dep. 27:5-10)

129.    When a PC takes a day off, is late or, leaves early, that time would come out of the annual leave time However, Cybershift is programmed to cascade.  Cybershift subtracts that time from the compensatory time bank first.  (Knipfing Dep. 27:11-20, 28:13-17, 34:16-19, 35:10-13, 105:3-16)

130.    The DOE policy requires PSOs to be paid in cash for hours after 35.  (Knipfing Dep. 110:4-8; Lopez Dep. 49:25-50:11, 72:14-17)

131. Prior to CyberShift, PCs would submit their signed time cards to the payroll secretary. The time cards submitted bore the PC's signature and the supervisor's signature. (Saunders Dep. 66:15-67:15-72:7-18)

132. The DOE obtained from their Regional Operations Center (ROC) a load screen document or a spreadsheet or an email showing the PCs' accruals, which included compensatory time balances. They uploaded those accrual balances into Cybershift. They did not check to ensure the accuracy of the accrual balances obtained -- they accepted them as accurate. (Knipfing Dep. 63:8-64:14)

133. Knipfing was aware that PCs alleged that their compensatory time was not accurately recorded and received questions from PCs about their accruals in general. (Knipfing Dep. 64:15-67:5)

134. Julio Angel Lopez, the director of administrative payroll for the DOE testified that for PCs the 36th through the 40th hour are to be compensated with compensatory time. (Lopez Dep. 37:9-16) Those hours would be placed in the employee's accrual bank for compensatory time. (Lopez Dep. 37:17-21, 38:24-39:2) The first line of accrual exhaustion is through the compensatory hours that have been accrued. (Lopez Dep. 38:10-14)

135. The DOE policy is that PCs are entitled to time and one half in cash if they work over forty hours. (Lopez Dep. 39:16-22; PC HR Guide at 3)

136. The electronic data consists of Cybershift, TKS, and FISA. The Cybershift data prior to October 2005 are unreliable. (Erath Report at 1-2) Cybershift data are not available for all plaintiffs nor are they available for the entire relevant period. The electronic data covers at most 152 individuals but no consistent time period for the individuals. (Erath Report at 2)

137.    The report of defendants' expert establishes that defendants are liable for unpaid overtime. According to Dr. Erath, his analysis of the incomplete data reveal cash overtime losses to be $58,712 across the entire plaintiff group and 1,370 hours of compensatory time owed. (Erath Report at 5)

138.    Compensatory time could be used in lieu of vacation time.   (Transcript of deposition of Lawrence E. Becker, taken on May 6, 2008 ("Becker Dep.") at 43:18-22, excerpts of which are annexed as Exh. C to Smith Aff.)

139.    At the orientation meetings with PCs, there were no materials regarding overtime and no discussions about working a forty-hour week.  (Becker Dep. 44:2-4; 44:18-22; Transcript of deposition of Karen Feuer, taken on May 7, 2008 ("Feuer Dep.") at 87:5-7, excerpts of which are annexed as Exh. C to Smith Aff.)

140.    At the PC orientation meetings the DOE personnel did not discuss overtime compensation. (Becker Dep. 40:21-41:2)

141.    PCs were invited and encouraged to attend borough-wide meetings. (Hughes Dep. 11:1-3; 19:4-14)  During the borough-wide meetings the issues of compensation, overtime, accrual of time, annual leave were not addressed.  (Hughes Dep. 21:16-22:7)

142.    The DOE administrators organized approximately four to five regional meetings, which were designed for professional development of the PCs.  (Hughes Dep. 24:15-25)

143.    At some of the regional meetings, PCs informed DOE administrators that some principals refused to allow them a flexible work schedule.  (Hughes Dep. 29:6-30:1; McMillan Aff. ¶¶ 7-8 and Exh. A annexed thereto)

144.    Prior to Cybershift, PCs and PSOs received compensatory time for hours worked over forty in a work week. (Hughes Dep. 61:1-23)

19

145.    Karen Feuer, who was the Parent Support Supervisor from July 2003 to September 2004 for Region 7, had approximately six regional meetings with PCs and PSOs. She testified that it was discussed at regional meetings where PCs were in attendance that if they worked over 40 hours in a workweek they would be compensated in money at time and a half. (Feuer Dep. 28:9-12, 98:4-6; 109:19-22)

146.    Feuer admitted that no Department of Labor postings were given to the PCs and PSOs during Feuer's regional meetings. Also, there were no discussions about the Fair Labor Standards Act, and no discussions regarding the posting of the required notices. (Feuer Dep. 53:5-23, 87:24-88:1)

147.    At the regional meetings, there was no discussion that PCs were prohibited from working over 40 hours in a workweek. (Feuer Dep. 67:14-19)

148.    The Human Resources personnel of the DOE told PCs that they should keep records of their compensatory time because no one else was keeping those records. (Feuer Dep. 58:8-15, 69:7-17)  PSOs were responsible for keeping their own time, including compensatory time. (Feuer Dep. 71:11-16)

149.    The DOE did not reprimand or discipline PCs and PSOs for working over forty (40) hours in a work week. (Kinsey Dep. 12:23-13:2; Guerrieri Dep. 20:23-22:14; Sanders Dep. 48:3-6; Davis Aff. ¶ 7; McMillan Aff. ¶ 10)

150.    Sacha Ingles the former director of parent support for District 75 testified that at the district meetings discussions were that PCs would receive monetary compensation for hours worked over forty. (Ingles Dep. 107:5-9)

151.    During the district-wide meetings, the Fair Labor Standards Act was not discussed. (Ingles Dep. 152:4-153:4)

152.   Prior to Cybershift, defendants paid for hours in excess of forty hours in a workweek in the form of straight compensatory time. (Chu Dep. 57:10-25; 59:1-10; Saunders Dep. 76:15-23)

153.   Many plaintiffs arrived at their respective work location prior to their scheduled start time. (Saunders Dep. 62:7-11, Palmieri Dep. 40:5-8; Guerrieri Dep. 29:19-31:15; Kinsey Dep. 22:16-23:3)   PCs testified that their respective principals never directed them to stop arriving prior to their scheduled shift. (Palmieri Dep. 40:5-8; Guerrieri Dep. 31:12-15)

154.   Some plaintiffs worked through their lunch hour and they told their supervisors or the supervisors were otherwise aware that the plaintiffs worked through their lunch hours. (Transcript of deposition of Rosemary Roman, taken November 20, 2007 ("Roman Dep.") at 59:15-61:20, 63:13-21; Saunders Dep. 53:10-54:21; Kinsey 23:25-25:1; Sanders Dep. 54:6-24)

155.   Prior to Cybershift, some plaintiffs recorded their time worked on time sheets. (Roman Dep. 65:10-12)

156.   The DOE intermittently paid some plaintiffs in cash during the relevant time period for hours worked over forty in a workweek.  Roman received cash on one occasion in October, 2007. (Roman Dep. 82:17-83:14)  PSO, Larry Davis received cash on one occasion in 2006 for hours worked over forty in a workweek. (Davis Aff. ¶ 6)

157.   Plaintiff Saunders has never received cash for all of her overtime hours worked in excess of her regularly scheduled hours. (Saunders Dep. 68:19-25, 69:23-70:3)

158.   Susan Olds, the executive budget director for the DOE testified she is not aware that there is a cap on the amount of overtime that a school can schedule for PCs. (Olds Dep. 24:12-16)

159.    The DOE places no restrictions or guidelines on the amount of overtime that any

school can schedule in their budget. (Olds Dep. 29:6-10, 35:4-8)

160.    A school principal has discretion to use or schedule funds that the DOE allocates

under the instructional programs for any program that he or she deems appropriate for the school.

(Olds Dep. 27:25-28:7) The instructional programs allocation has a component which is a pupil

per capita, which is meant to cover non-teacher needs, other needs that the schools may have.

The pupil per capita is to pay for anything that the school feels it needs. (Olds Dep. 40:18-41:4)

161.    Schools may file appeal of budget allocations.  There is nothing in the process

that would prevent a region from filing an appeal for allocation of a budget for overtime

expenditures for PCs. (Olds Dep. 29:23-32:9)

162.    Olds is not aware of any specific policy that would prevent a region from

appealing for overtime for PSOs. (Olds Dep. 50:7-20)


Dated: New York, New York
        September 9, 2008


                        Respectfully submitted,

                        LEWIS BRISBOIS BISGAARD & SMITH, LLP



                        By: _Ivan D. Smith_____
                            Ivan D. Smith (IS-2659)
                            Maureen M. Stampp (MS-8453)
                            Sabrina Tann (ST-2552)
                            Attorneys for Plaintiffs
                            199 Water Street, Suite 2500
                            New York, New York 10038-3516
                            (212) 232-1300