UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CYNTHIA SAUNDERS, et al.,

                        Plaintiffs,

           -against-

THE CITY OF NEW YORK, et al.,

                       Defendants.
-------------------------------------------------------------------X

                      07 Civ. 830 (SAS)(KNF)

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Attorneys for Plaintiffs
199 Water Street, Suite 2500
New York, New York 10038-3516
(212) 232-1300

Ivan D. Smith, Esq.
Maureen M. Stampp, Esq.
Sabrina Tann, Esq.
*Of Counsel*

4814-6369-4338.1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………...........i

PRELIMINARY STATEMENT……………………………………………………………1

STATEMENT OF FACTS………………………………………………………………….3

ARGUMENT……………………………………………………………………………….3

### POINT I

LEGAL STANDARDS APPLICABLE TO A MOTION FOR PARTIAL SUMMARY
JUDGMENT………………………………………………………………………………3

### POINT II

DEFENDANTS' PAYMENT OF COMPENSATORY TIME IN LIEU OF CASH
VIOLATES THE FLSA……………………………………………………………………4

    A. ANY WAIVER MUST BE CLEAR AND
       UNMISTAKABLE………………………………………………………….....6

    B. DEFENDANTS MISSTATE THE APPLICABLE LABOR
       LAW……………………………………………………………………………9

    C. THE CITY MAY NOT RELY ON INDIVIDUAL AGREEMENTS
       WITH PLAINTIFFS…………………………………………………………..11

### POINT III

DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFFS' COMPENSATORY TIME USAGE CLAIM…………………………...12

    A. FLSA's COMPENSATORY TIME USAGE REQUIREMENT……13

    B. DISPUTED ISSUES OF FACT EXIST ON WHETHER
       PLAINTIFFS' REQUESTS TO USE COMPENSATORY TIME
       WERE GRANTED WITHIN A REASONABLE PERIOD…………14

### POINT IV

PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR CLAIM
THAT DEFENDANTS FAILED TO PAY THEM AT THE OVERTIME RATE……..16

**POINT V**

THE DOE VIOLATED FLSA'S RECORDKEEPING REQUIREMENTS..................18

**POINT VI**

THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED..............20

**POINT VII**

PLAINTIFFS ARE ENTITLED TO THE APPLICATION OF THE THREE YEAR
STATUTE OF LIMITATIONS...................................................................22

**POINT VIII**

PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES.............................24


CONCLUSION...................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Acosta v. Yale Club*, 1995 U.S. Dist. LEXIS 14881 ............................................................18

*Adams v. Department of Juvenile Justice of the City of New York*, 1996 U.S. Dist. LEXIS 2128 (S.D.N.Y. Feb. 26, 2996), rev'd on other grounds, 141 F.3d 61 (2d Cir. 1998).................................................................................................................5, 8

*Ahern v. County of Nassau*, 118 F.3d 118 (2d Cir. 1997).................................................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).........................................................4

*Anderson v. Mt. Clemens*, 328 U.S. 680 (1946) .................................................................19

*Auer v. Robbins*, 519 U.S. 452 (1997) ...............................................................................17

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) ............................4

*Beck v. City of Cleveland*, 390 F.3d 912 (6th Cir. 2004)) .................................................15

*Blakely v. City of Aurora*, 679 F. Supp. 1008 (D. Col. 1988)(i)........................................12

*Bonham v. Dresser Industrial, Inc.*, 569 F.2d 187 (3d Cir. 1977)....................................21

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002).........................................................4

*Capobianco v. City of New York*, 422 F.3d 47 (2d Cir. 2005).............................................4

*Chao v. Vidtape, Inc.*, 196 F. Supp. 2d 281 (E.D.N.Y. 2002) ...........................................20

*Christensen v. Harris County et al.*, 529 U.S. 576 (2000)..................................................10

*Consolidated Rail Corp. v. Railway Labor Executives Association*, 491 U.S. 299 (1989)...................................................................................................................................11

*Cox v. Town of Poughkeepsie*, 209 F. Supp. 2d 319 (S.D.N.Y. 2002) ..............................24

*Creasey v. Metro-North Commuter*, 269 Fed. Appx. 75 (2d Cir. 2008)....................10

*D'Camera v. District of Columbia*, 693 F. Supp. 1208 (D.D.C. 1988) ............................11

*Debraska v. City of Milwaukee*, 131 F. Supp. 2d 1032 (E. D. Wis. 2000)........................14

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).............................................................9

*Fayer v. Town of Middlebury*, 258 F.3d 117 (2d Cir. 2001)..................................7

*Franklin v. New York Law Publishing Co.*, 1995 U.S. Dist. LEXIS 9566, July 11, 1995) .............................................................................................................18

*Giles v. City of New York*, 41 F. Supp. 2d 308 (S.D.N.Y. 1999)........................7

*Harold Levinson Associates, Inc. v. Chao*, 2002 U.S. App. LEXIS 9796 (2d Cir. 2002) ...................................................................................................20, 23

*Hellmers v. Town of Vestal, New York*, 969 F. Supp. 837 (N.D.N.Y. 1997)...............13, 16

*Herman v. RSR Security Services Ltd.*, 172 F.3d 132 (2d Cir. 1999) ..........................24, 25

*Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005) ............................................................4

*In the Matter of Kreta Shipping, S.A.*, 181 F.R.D. 273 (S.D.N.Y. 1998) ..........................14

*Jacksonville Professional Fire Fighters Association Local 2961 v. City of Jacksonville*, 685 F. Supp. 513 (E.D.N.C. 1987)..........................................................12

*Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324 (E.D.Pa. 1984) ................................22

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996)..........................................................4

*Lee v. ABC Carpet & Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ........................................18

*Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)...........16

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)...................................................22

*Metropolitan Edison Co. v. NLRB*, 460 U.S. 693 (1983) ...................................................7

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ......................................................23

*Moreau v. Klevenhagen*, 508 U.S. 22 (1993) ...................................................................12

*Nabisco v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000)...........................................3

*Overton v. N.Y. State Division of Military & Naval Affairs*, 373 F.3d 83 (2d Cir. 2004) ...................................................................................................................4

*Parker v. City of New York*, 2008 U.S. Dist. LEXIS 38769 (S.D.N.Y. May 13, 2008) ............................................................................................................13, 15

ii

*Pyett v. Pennsylvania Building Co.*, 498 F.3d 88 (2d Cir. 2007)..........................................7

*R.G. Group v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984)........................................4

*Reich v. Southern New England Telecomm. Corp.*, 121 F.3d at 58 (2d Cir. 1997).....24, 25

*Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir. 1995) ..........................................................23

*Rogers v. NYU*, 220 F.3d 73 (2d Cir. 2000).........................................................................7

*Takeda Chemical Industrial v. Mylan Laboratories Inc.*, 2006 U.S. Dist. LEXIS
    278 (S.D.N.Y. Jan. 9, 2006)...........................................................................................14

*Tran v. Tran*, 2000 U.S. Dist. LEXIS 10946 (S.D.N.Y. Aug. 4, 2000), modified in
    part on other grounds at, 281 F.2d 23 (2d Cir. 2002) .............................................20, 23

*Trang v. DC 37, et al.*, 2000 U.S. Dist. LEXIS 5037 (S.D.N.Y. Apr. 20, 2000)..................9

*Trigg v. New York City Transit Authority*, 2001 U.S. Dist. LEXIS 10825
    (E.D.N.Y. Jul. 24, 2001 S.D.N.Y.) ..................................................................................9

*U.S. v. Mahender*, 2008 U.S. Dist. LEXIS 55108 (E.D.N.Y. Jul. 19, 2008).....................22

*Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004)................20, 22

*Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70 (1998)...........................................7

## STATE CASES

*Aeneas McDonald Police Benevolent Association, Inc. v. City of Geneva*, 92
    N.Y.2d 326 (Ct. App. 1998) ....................................................................................9, 10

*Franklin Central Sch. District v. Franklin Teachers Association*, 657 N.Y.S.2d
    213 (3rd Dep't 1997) .......................................................................................................10

*PERB v. Board of Education of Buffalo*, 39 N.Y.2d 86 (Ct. App. 1976) ...........................12

## FEDERAL STATUTES

Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq..................................................1

Federal Rules Civil Procedure 56(c)......................................................................................3

29 C.F.R. § 516.4

29 C.F.R. § 553.23, et seq.

**STATE STATUTE**

New York Civil Service Law § 209-a (Consol. 2000)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CYNTHIA SAUNDERS, et al.,

                           07 Civ. 830 (SAS)(KNF)

                Plaintiffs,

      -against-

THE CITY OF NEW YORK, et al.,

                Defendants.
------------------------------------------------------------------X

## INTRODUCTION

We represent the plaintiffs in this collective action brought pursuant to the Fair Labor

Standards Act of 1938, 29 U.S.C. § 201, et seq. (the "FLSA"). Plaintiffs oppose the motion of

defendants the City of New York and the Department of Education (hereinafter collectively the

"City" or the "DOE") for partial summary judgment. There are genuine issues of material fact

that preclude the grant of summary judgment on the grounds set forth by defendants. Plaintiffs

cross move for summary judgment.

## PRELIMINARY STATEMENT

Plaintiffs filed the complaint in this action on February 7, 2007, alleging four causes of

action. Plaintiffs allege that defendants violated the FLSA by: (1) their failure to pay plaintiffs in

cash at the rate of time and one half for hours worked over 40 in a workweek; (2) their failure to

pay plaintiffs for hours worked between 35 and 40 in a workweek; (3) converting plaintiffs'

compensatory time to sick leave after 90 days or otherwise preventing plaintiffs from using their

compensatory time;[1] and (4) interfering and preventing plaintiffs from filing their claims under

FLSA within the three year statute of limitations by failing to post official notices that disclosed

---

[1] Plaintiffs, on July 14, 2008, withdrew their claim alleging that defendants, after 90 days, converted their compensatory time into sick leave.

to plaintiffs their statutory right to be paid in cash at time and one half for overtime hours and by misinforming plaintiffs as to their statutory right to overtime pay.

Defendants now move for partial summary judgment on the following grounds: (1) the payment of compensatory time instead of cash for hours worked over 40 in a workweek does not violate the FLSA; (2) defendants permitted plaintiffs to use accrued compensatory time as requested or within a reasonable time after usage was requested unless the use caused an undue disruption to DOE's operation; and (3) that there is no evidence of an "actual practice" to pay plaintiffs straight time instead of time and one half for hours worked over 40 in a workweek.

The Court should deny defendants' motion for partial summary for several reasons. First, the FLSA explicitly mandates the payment of cash for overtime in excess of 40 hours in a workweek and defendants cannot meet the narrowly crafted exceptions to the payment of cash for such overtime. Moreover, defendants' claim that they were permitted to pay for FLSA overtime with compensatory time instead of cash because of an implied agreement with plaintiffs' union and/or individual agreements with plaintiffs, is invalid as a matter of law. Also, those arguments are fraught with disputed issues of fact, making them unsuited for summary judgment.

Second, defendants cannot obtain summary judgment on plaintiffs' claim that they were not granted usage of the accrued compensatory time in a reasonable period after their requests. Defendants' motion is replete with disputed issues of material fact, which preclude summary judgment. Third, defendants' claim that plaintiffs are required to show the existence of an "actual practice" or "employment policy" in order to establish liability for underpayment misstates the law and should be rejected. Accordingly, defendants are not entitled to summary judgment on any of their claims.

Plaintiffs now move for partial summary judgment against defendants on the following grounds: (1) defendants are liable to plaintiffs for failure to pay for overtime in cash; (2) defendants are liable to those plaintiffs who were not compensated at all for hours worked over forty hours in a workweek; (3) defendants are liable to those plaintiffs who were paid at the straight time rate instead of the overtime rate for hours worked over 40 in a workweek; (4) the statute of limitations should be equitably tolled because defendants failed to post the required Department of Labor FLSA notices; and (5) plaintiffs are entitled to the application of a three year statute of limitations due to defendants' willful violation of the FLSA.

STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to Plaintiffs' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pls. 56.1"), the Affidavit of the Ivan D. Smith, sworn to September 9, 2008 ("Smith Aff.") and the exhibits annexed thereto, the Declaration of Louis R. Lanier, Ph.d., the affidavits of plaintiffs Larry Davis and June McMillan, and the supporting evidence cited to therein for a statement of the pertinent and material undisputed facts.

ARGUMENT

POINT I

LEGAL STANDARDS APPLICABLE TO<br>A MOTION FOR PARTIAL SUMMARY JUDGMENT

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court considers a dispute to be 'genuine' if the evidence establishes that a reasonable jury could return a verdict for the non-moving party. Nabisco v. Warner-Lambert Co., 220 F.3d 43, 45 (2d Cir.

2000).  Moreover, "a fact is 'material' if it 'might affect the outcome of the suit under the governing law.'"  Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  It is the moving party's burden to show that no genuine factual dispute exists.  See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005).  The Court must construe the facts in the light most favorable to the non-moving party.  Capobianco v. City of New York, 422 F.3d 47, 54-55 (2d Cir. 2005).

To avoid summary judgment, the non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002).  Rather, the non-moving party must set forth "concrete particulars" showing that a trial is needed.  R.G. Group v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984) (citations omitted).  Conclusory statements, conjecture or speculation are insufficient to defeat summary judgment.  Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

## POINT II

### DEFENDANTS' PAYMENT OF COMPENSATORY TIME IN LIEU OF CASH VIOLATES THE FLSA

The FLSA was designed to give specific minimum protections to individual workers and to ensure that each covered employee would receive "[a] fair day's pay for a fair day's work" and would be protected from the "evil of 'overwork' as well as 'underpay.'"  Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (internal citations omitted). Under the FLSA, the use of compensatory time rather than cash for overtime compensation is strictly limited.  The statute provides in pertinent part:

> (1) Employees of a public agency ... may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at the

rate not less than one and one-half hours for each hour of employment for
which overtime compensation is required by this section.

(2) A public agency may provide compensatory time under ¶ 1 only –

(A) pursuant to –

    (i)    applicable provisions of a collective bargaining agreement,
            memorandum of understanding, or any other agreement between
            the public agency and representatives of such employees....

29 U.S.C. § 207(o).  In short, only a public employer may use compensatory time rather than

cash to pay for FLSA overtime.  In the case of employees who are represented by a collective

bargaining agent, a public employer pay in compensatory time only pursuant to the terms of a

collective bargaining agreement, memorandum of understanding or other agreement.  See Adams

v. Dep't of Juvenile Justice of the City of New York, 1996 U.S. Dist. LEXIS 2128, *13-*15

(S.D.N.Y. Feb. 26, 2996) (use of compensatory time for public employers must be pursuant to

agreement), rev'd on other grounds, 141 F.3d 61 (2d Cir. 1998).

    Defendants admit that they did not pay plaintiffs in cash for hours worked over 40 in a

workweek.  (Pls. 56.1, ¶ 103; Defs. Mem. at 5-6)  Defendants attempt to defend its failure by

claiming the existence of an implied agreement with plaintiffs' representative.  (Defs. Mem. at 6-

16)[2]

---

[2]  Defendants' claim of an implied agreement is newly minted.  Defendants, in their
Answer to the Complaint, did not assert the existence of an implied agreement as an affirmative
defense and never sought to amend their Answer.  At all other times defendants claimed that
plaintiffs had individual agreements with their respective principals to be paid in compensatory
time instead of cash for overtime hours.  Specifically, defendants' counsel at the pre-motion
conference before the Court on June 20, 2008, stated that the individual agreement existed.  (See
transcript of court conference held on June 20, 2008 at 15:1-19).  Defendants have failed to
produce any such affidavits attesting to the existence of individual agreements.  Moreover,
defendants have demonstrated bad faith in proffering this last minute argument despite having
several opportunities to amend their answer and/or inform the Court and plaintiffs of their
intention to assert this defense.

Defendants are not entitled to summary judgment on this claim for two reasons. First, defendants' claim to an implied agreement fails as a matter of law. Any waiver of plaintiffs' statutory right to receive cash must be clear and unmistakable. An implied agreement cannot, by definition, meet this standard. Second, defendants attempt to bolster their claim of an implied agreement with facts that are hotly disputed in this matter. Thus, this claim as set forth by defendants, is not ripe for summary judgment.

In the event the Court finds that there cannot be an implied agreement as a matter of law, the Court should deny defendants' motion for summary judgment on this claim, and plaintiffs request that the Court grant them summary judgment on the claim of liability.

A.    Any Waiver Must Be Clear and Unmistakable

Defendants correctly note that the collective bargaining agreement between the DOE and District Council 37 (the "Agreement") is silent on the issue of overtime compensation. (Defs.' Mem. at 5) Defendants erroneously argue that this silence, coupled with the union's alleged acquiescence to the DOE's practice to pay plaintiffs in compensatory time instead of cash for hours worked over 40 in a workweek, amount to an implied term Agreement. (Defs. Mem. 5-6) In essence, defendants invite the Court to rewrite the Agreement and to award them a benefit that they could only receive through collective bargaining. The Court must decline this invitation.[3]

It is well settled that a court "will not infer from general contract provisions that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly

Plaintiffs are prejudiced by defendants' failure to provide notice of their "implied agreement" defense. Plaintiffs were denied discovery on this issue. Accordingly, the Court should reject the defense on this ground as well.

[3]    Defendants cite no cases for the proposition that a union can waive a member's statutory right to cash compensation through an implied agreement. Also, they cite no cases to support their claim that they can validly enter into individual agreements with employees to pay them in compensatory time in lieu of cash when those employees are represented by a collective bargaining agent.

stated.'" Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 78 (1998) (quoting Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708 (1983) (union's waiver of officers' statutory right to be free from anti-union discrimination must be clear and unmistakable)). In analogous circumstances where it is asserted that, by virtue an arbitration provision of a collective bargaining agreement ("CBA"), a union waived members' rights to bring FLSA claims in federal court, it is well settled that such a waiver must be clear and unmistakable and cannot be implied. The arbitration provision must evince a clear and unmistakable waiver of the covered employee's right to a judicial forum. In these circumstances, the Second Circuit has stated that waiver of statutorily conferred right to a judicial forum is clear and unmistakable only if: (1) "the arbitration clause contains a provision whereby employees specifically agree to submit all federal causes of action arising out of their employment to arbitration"; or (2) "the CBA contains an explicit incorporation of the statutory anti-discrimination requirement in addition to a broad and general arbitration clause." Rogers v. NYU, 220 F.3d 73, 76 (2d Cir. 2000) (mandatory arbitration clauses in collective bargaining agreements are unenforceable to the extent they waive the rights of covered workers to a judicial forum for federal statutory causes of action).

In Fayer v. Town of Middlebury, 258 F.3d 117, 123 (2d Cir. 2001), the Second Circuit held that under Wright, a collective bargaining agreement could not bar a covered employee from pursuing a First Amendment claim in federal court because it did not clearly and unmistakably waive the employee's right to pursue the claim. See Pyett v. Pennsylvania Building Co., 498 F.3d 88, 93-94 (2d Cir. 2007) ("arbitration provisions contained in a CBA, which purport to waive employees' right to a federal forum with respect to statutory claims are unenforceable"); Giles v. City of New York, 41 F.Supp.2d 308, 312 (S.D.N.Y. 1999) (under

Wright, waiver of employee's right to pursue FLSA claim in federal court must be clear and unmistakable).

The FLSA governing regulations are consistent with these cases. The regulations provide that the agreement or understanding concerning the use of compensatory time must be between the employees' representative and the public agency either through a collective bargaining agreement, a memorandum of understanding, or other oral or written agreement. 29 C.F.R. § 553.23(b).

Defendants' claim to an implied agreement is belied by defendants' own documents. Defendants, in the Rules and Regulations Governing Non-Pedagogical Administrative Employees (the "Rules"), provide that:

> "[c]ompensatory time may not be utilized for represented employees unless explicitly provided for in a collective bargaining agreement. Division or office heads must obtain the consent of the non-represented employees covered by FLSA to accept compensatory time in lieu of cash payment for overtime worked in excess of forty (40) hours." (emphasis added.) (Pls. 56.1, ¶ 98)

Moreover, the Parent Coordinator Human Resources Guide provides that "[t]ime above 40 is credited as time and one half and must be compensated in cash. There is no provision to credit time worked above 40 in any given week as compensatory time." (Pls. 56.1, ¶ 102)

Defendants' implicit agreement defense is further undermined by their payment of cash for overtime hours to some plaintiffs in 2006 and 2007. (Pls. 56.1, ¶ 156)

Defendants cannot show that they have paid compensatory time in lieu of cash pursuant to an agreement with the plaintiffs' representative. Accordingly, defendants cannot meet the narrowly carved exception afforded public employers to use compensatory time instead of cash to pay for overtime. Thus, a FLSA violation has been established. See Adams, 1996 U.S. Dist.

LEXIS 2128, at *15 (if the use of compensatory time by defendants was contrary to contract, it necessarily violates the FLSA).

### B.  Defendants Misstate the Applicable Labor Law

District Council 37 is a municipal union of the State of New York.  As such it is organized under New York State Fair Employment Act.  (Pls. 56.1, ¶ 95)  Trigg v. New York City Transit Authority, 2001 U.S. Dist. LEXIS 10825, *39-*40 (E.D.N.Y. Jul. 24, 2001 S.D.N.Y.) (duty of fair representation claims against District Council 37 governed by New York Civil Service Law § 209-a (Consol. 2000)); see Trang v. DC 37, et al., 2000 U.S. Dist. LEXIS 5037, *13-*14 (S.D.N.Y. Apr. 20, 2000) (accord).  Accordingly, the agreement is grounded in New York law and not federal labor law.  Thus, New York law is applicable to determine the existence of any implied term to the collective bargaining agreement between the City and District Council 37.  Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78 (1938) (except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State).

Defendants' reliance on past practice and other parole type evidence to support a claim of implied agreement fails as a matter of law.  The cases defendants cite to support their plea that the Court should read an implied agreement into the agreement are inapposite to the case at hand. (Defs. Mem. at 6).  Moreover, they are federal cases and the Agreement is governed by the laws of New York State.  See infra at POINT II, B.

Under New York law, "courts may look to past practice to give definition and meaning to language in an agreement, including a collective bargaining agreement."  Aeneas McDonald Police Benevolent Ass'n, Inc. v. City of Geneva, 92 N.Y.2d 326, 333 (Ct. App. 1998).  However, "past practice, like any other form of parole evidence, is merely an interpretive tool and cannot

be used to create a contractual right independent of some express source in the underlying agreement." Id., citing Franklin Cent. Sch. Dist. v. Franklin Teachers Ass'n, 657 N.Y.S.2d 213, 214, (3rd Dep't 1997) (affirmed lower court order vacating arbitration award because arbitrator relied on past practices so as to make them an implied part of the contract).

Defendants' reliance on Christensen v. Harris County et al., 529 U.S. 576 (2000) (Defs. Mem. at 5) is misplaced. In Christensen, the court considered whether a public agency may require its unrepresented employees to use accrued compensatory time where each individual plaintiff had agreed to accept compensatory time in lieu of cash as compensation for overtime. 529 U.S. at 580. The Court, in footnote 1, referred to the governing regulation that allows for an informal agreement between the public agency and the individual, such as when an employee works overtime knowing that the employer rewards overtime with compensatory time. Id., 29 C.F.R. § 553.23(c)(1).

This is not the case at hand. The plaintiffs here are represented by a union. In accordance with the FLSA, the governing regulation provides such agreement or understanding concerning the use of compensatory time must be between the representative and the public agency either through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement. 29 C.F.R. § 553.23(b)(1). Neither Christensen nor the governing regulations provide for an "implied agreement" in these circumstances.

Defendants' reliance on Creasey v. Metro-North Commuter, 269 Fed. Appx. 75 (2d Cir. 2008), is equally misplaced. Creasey is a post arbitration decision where plaintiff sought an order vacating an arbitration award denying plaintiff reinstatement to his former position. There, an arbitrator had interpreted the collective bargaining agreement, and a court concluded that

where the Board cited "established and uncontested company policy" as the basis of the employer's actions, the board could construe the agreement to include that policy and therefore did not exceed its jurisdiction.  Id.  Similarly, Consol. Rail Corp. v. Railway Labor Executives Ass'n, 491 U.S. 299 (1989) is a post arbitration case where the parties had agreed, prior to arbitration, that the railroad's policy of conducting physical examinations was an implied term of their collective bargaining agreement.  Id., 491 U.S. at 301.  At issue was the railroad addition of urinalysis drug screening as part of the return to duty physical examination.  The Supreme Court in Consol. Rail decided whether the new testing procedure was a major or minor dispute under Railway Labor Act.  Id., 491 U.S. at 301-04.  Contrary to defendants' belief, these post arbitration cases do not support a defendants' position.

C.    The City May Not Rely On Individual Agreements with Plaintiffs

Contrary to defendants' assertions (Defs.' Mem. at 5), both Congress and the Supreme Court have spoken to the issue of whether a public employer may contract with individual employees to be compensated in compensatory time in lieu of cash when they are represented by a collective bargaining agent.  Congress and the Supreme Court have answered in the negative.

Section 207(o)(2)(a)(i) provides that a public agency may provide compensatory time only pursuant to applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees.  29 U.S.C. § 207(o)(1)(2)(A)(i).  Courts have found that the language contained in § 207(o)(2)(A)(i) is clear and unambiguous.  D'Camera v. District of Columbia, 693 F.Supp. 1208, 1214 (D.D.C. 1988) (§ 207(o)2)A)(i) of the FLSA's amended overtime provision is "plain, precise, and devoid of ambiguity" and where employees are covered by a bargaining agreement, the FLSA requires that an arrangement be ratified by the employees' representative and be

pursuant to a collective bargaining agreement). See Blakely v. City of Aurora, 679 F. Supp. 1008, 1010-11 (D. Col. 1988) (where employees are represented by a bargaining agent, § 207(o)(2)(A)(i) requires the employer and the employees' representative to negotiate compensatory time agreements); Jacksonville Professional Fire Fighters Ass'n Local 2961 v. City of Jacksonville, 685 F.Supp. 513, 523 (E.D.N.C. 1987) (employer required to enter into an agreement with the employees' representative with respect to comp time off policy).

The Supreme Court in Moreau v. Klevenhagen, 508 U.S. 22, 35 (1993) held that employees are covered by subclause 29(1) of U.S.C. §207(o)(2)(A) when they designate a representative who lawfully may bargain collectively on their behalf. Accordingly, any agreement with an individual plaintiff is null and void and invalid as a matter of law. Blakely, 679 F. Supp. at 1011 (employer's agreement with certain employees who were represented by the association were null and void because they violated § 207(o)(2(A)(i)).

Moreover, under New York law, a public employer may not deal directly with an employees represented by a union on matters of compensation. See PERB v. Board of Education of Buffalo, 39 N.Y.2d 86, 89-90 (Ct. App. 1976) (affirming PERB's and lower court orders for public employer to cease and desist from refusing to negotiate with the union and from engaging in negotiations with individual employees).

Accordingly, any agreement with an individual plaintiff to receive compensatory time in lieu of cash of overtime is invalid as a matter of law.

POINT III

DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFFS' COMPENSATORY TIME USAGE CLAIM

Defendants move for summary judgment on plaintiffs' claim that defendants denied them use of accrued compensatory time in a reasonable period. Defendants are not entitled to

summary judgment on this claim because disputed issues of fact exist concerning whether plaintiffs were allowed to use accrued compensatory time within a reasonable period after their requests.

      A.     <u>FLSA's Compensatory Time Usage Requirement</u>

The FLSA provides that employees like plaintiffs shall be permitted to use accrued compensatory time "within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency." 29 U.S.C. § 207(o)(5)(A)(B). An employee has the right to use accrued compensatory time as the employee sees fit subject only to the employer's limited right to deny an employee's request if it would unduly disrupt the employer's operations. <u>Hellmers v. Town of Vestal, New York</u>, 969 F. Supp. 837, 847 (N.D.N.Y. 1997).

The DOL regulations provide that whether a request to use compensatory time has been granted within a "reasonable period" will be determined by considering the customary work practices within the agency based on the facts and circumstances in each case. Such practices include, but are not limited to: (a) the normal schedule of work, (b) anticipated peak workloads based on past experiences, (c) emergency requirements for staff and services, and (d) the availability of qualified substitute staff. 29 C.F.R. § 553.25(c)(1). Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. 29 C.F.R. § 553.25(d). For an agency to deny a request requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency to provide services of acceptable quality and quantity for the public during the time requested without the use of the employee's services. <u>Id.</u> A financial burden does not on its own rise to the level of an undue disruption of the operation of a public agency. <u>Parker v. City of New York,</u> 2008 U.S. Dist.

LEXIS 38769, *25 (S.D.N.Y. May 13, 2008) (citing Debraska v. City of Milwaukee, 131 F.

Supp. 2d 1032, 1037 (E. D. Wis. 2000)).

      B.     Disputed Issues of Fact Exist on Whether Plaintiffs' Requests
              To Use Compensatory Time Were Granted Within a Reasonable Period

       Several plaintiffs testified that defendants denied them the use of accrued compensatory

time when they requested such use without offering them alternative dates. (See Saunders Dep.

79:2-82:9; Roman Dep. 77:3-81:2; Sanders Dep. 63:12-64:14; Gordon Dep. 59:1-61:16, annexed

as Exhibits I, K, and L to Voigt Decl.)

       Defendants rely on the analysis of the leave accrual and usage data performed by their

expert Dr. Christopher Erath to conclude that there is no evidence that plaintiffs were unable to

use their compensatory time within a reasonable period after their requests. Defendants' reliance

on Dr. Erath's analysis is misplaced because his conclusions are unfounded.[4]

       Further, Dr. Erath's analysis cannot resolve the factual dispute surrounding the plaintiffs'

claim that they were denied use of their accrued compensatory time in violation of the FLSA.

Defendants claim that Dr. Erath's analysis shows that plaintiffs were accruing compensatory

time, using their compensatory time and in some instances using more compensatory time than

they had accrued. With respect to the group of named and test plaintiffs, Dr. Erath found across

87 persons years, 75 showed some usage of compensatory time, and the average amount of

compensatory time accrued exceeded that used by only 6.8 hours per year. Based on this data,

---

[4]    The Declaration of Dr. Erath should not be considered because his declaration goes
beyond the opinions expressed in his expert report dated July 14, 2008. Dr. Erath's Report did
not contain an analysis or opinion with respect to plaintiffs' accrual and usage of compensatory
time. Accordingly, his declaration should be stricken. See Takeda Chemical Indus. v. Mylan
Lab. Inc., 2006 U.S. Dist. LEXIS 278, *4-*5 (S.D.N.Y. Jan. 9, 2006) (striking portions of expert
trial affidavit as those opinions not contained in earlier expert report); see also, In the Matter of
Kreta Shipping, S.A., 181 F.R.D. 273, 275-77 (S.D.N.Y. 1998) (trial affidavit criticizing other
expert report violates the requirement of Rule 26(a)2)(B) because it was not previously disclosed
in the form of a rebuttal expert report).

defendants conclude that these numbers are inconsistent with plaintiffs' claim that they were not permitted to use their accrued compensatory time. (Defs.' Mem. at 19) Dr. Erath's analysis is problematic for several reasons.

First, contrary to defendants' assertions, plaintiffs do not claim that they were not permitted to use accrued compensatory time. Rather, plaintiffs claim that they were not permitted to use accrued compensatory time within a reasonable period after requesting it.

Dr. Erath's analysis, at most, shows a small sampling of accruals versus usage. The analysis is not informative on the issue of whether plaintiffs were allowed to use their accrued compensatory time in a reasonable time after request. Evidence of frequent usage does not necessarily indicate that the compensatory time system complies with § 207(o)(5). To determine whether or not defendants have complied with the "reasonable period" requirement of the FLSA, the requested usage dates must be compared with the dates of actual approval. The time and leave data and Dr. Erath's analysis reveal nothing about plaintiffs' requested usage dates or the dates on which these requests are actually granted. <u>Parker v. City of New York</u>, 2008 U.S. Dist. LEXIS 38769, *28 (leave and usage data analysis inconclusive with respect to whether compensatory time system complies with FLSA) (citing <u>Beck v. City of Cleveland</u>, 390 F.3d 912 (6th Cir. 2004)) (reversing district court's grant of summary judgment in favor of public employer, despite findings that the employee plaintiffs used an average of 15.2 days of compensatory time annually).

Second, the DOE policy requires that compensatory time be used before paid vacation time when an employee takes annual leave. (Pls. 56.1, ¶¶ 129, 134) The implication of this rule is that one cannot examine the compensatory time data and draw any conclusions about its voluntary or reasonable usage. The existence of the rule results in the usage of compensatory

time any time it is available to cover paid vacation, whether the employee wishes to use compensatory time or not.  In light of this, none of Dr. Erath's observations or conclusions can be construed to reveal anything about the voluntary or reasonable usage of compensatory time after its accrual.[5]

Defendants claim that the evidence establishes that plaintiffs were denied use of accrued compensatory time because granting the request would cause an undue disruption to the DOE's operations.  (Defs. Mem. at 21-24)  Defendants' claim, however, is unsupported by the record. Defendants fail to set forth any evidence in terms of deposition testimony or affidavits to support these claims.  The Court, on defendants' motion for summary judgment is constrained to resolve all ambiguities and draw all reasonable inferences against the DOE, the moving party on this claim.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Given the existence of genuine issues of material fact concerning whether the grant of compensatory time would unduly disrupt the DOE's operations, the Court must deny summary judgment.  Hellmers, 969 F. Supp. at 848 (summary judgment denied as genuine issue of material fact as to whether moving party's restrictions on the use of compensatory time are necessary to prevent undue disruption).

POINT IV

PLAINTIFFS ARE ENTITLED TO SUMMARY
JUDGMENT ON THEIR CLAIM THAT DEFENDANTS
FAILED TO PAY THEM AT THE OVERTIME RATE

---

[5]    Further, the bank of accrued comp time never falls below zero.  Therefore, if compensatory time is being used by an employee, then it must be because that employee has a positive bank of accrued compensatory time from an earlier period.  Thus, given that the employee's compensatory time bank never falls below zero or reaches a negative status, Dr. Erath's analysis demonstrates that usage hours above accruals for a given year necessarily must have been accrued at an earlier period in time.  Dr. Lanier's comparable analysis for all plaintiffs for the entire period revealed that the accruals exceed usage by over 4,464 hours.  (See Lanier's Decl., annexed as Exhibit E to Smith Aff.)

It is undisputed that defendants failed to pay plaintiffs at the rate of time and one half for hours worked over 40 in a workweek. Defendants' counsel, in response to a direct question from the Court, admitted that there are some plaintiffs who were not paid at the rate of time and one half for overtime. (May Conf. at 5:23-6:1, annexed as Exhibit H to Smith Aff.) Defendants, relying on the findings of their expert, admits that there are at least six instances where a plaintiff was paid at straight time for hours worked beyond 40. (Defs. Mem. at 24-25; Erath Decl. ¶ 26).[6]

Defendants erroneously claim that they should be excused from liability because plaintiffs have not shown an "actual practice" or "employment policy that creates a significant likelihood" of failing to pay its employees at a rate of time and one half for hours worked over 40 in a workweek. (Defs. Mem. at 24) Defendants again misstate the law.

The FLSA does not require the finding of an "actual practice" or "employment policy" to find an employer liable for violations of the overtime provisions of the statute. Defendants completely misconstrue the Supreme Court decision in Auer v. Robbins, 519 U.S. 452 (1997). In Auer, the Secretary of Labor, in an amicus brief filed at the request of the Court, interpreted the salary-basis test to deny exempt status when employees are covered by a policy that permits disciplinary or other deductions in pay "as a practical matter". The Secretary announced that the standard is met if there is either an "actual practice" of making such deductions or an "employment policy that creates a significant likelihood" of such deductions. Auer, 519 U.S. at

---

[6] Dr. Lanier, plaintiffs' expert, analyzed the complete Cybershift and TKS data files and found that across 3,971 pay periods (7,584 weeks), there were 684 weeks in which a plaintiff worked more than 40 hours, and 645 of those weeks were in pay periods where the plaintiff was underpaid. That is, in 94.3 percent of the weeks when plaintiff worked overtime, they were underpaid in the corresponding pay period. (Lanier Decl. ¶ 26, annexed as Exhibit E to Smith Aff.)

461.   Neither the Secretary nor the Court required a showing of an "actual practice" or "employment policy" in other contexts where the employees' non-exempt status is undisputed.

Similarly, defendants misconstrue the Second Circuit decision in Ahern v. County of Nassau, 118 F.3d 118, 121-22 (2d Cir. 1997).  There, the Second Circuit affirmed the district court decision that the plaintiffs were subject to the "bona fide executive" exemption, and thus, not entitled to overtime pay because they could not show an "actual practice" or "significant likelihood" of pay docking.  Id.

It is undisputed that the FLSA clearly requires that employers pay employees overtime wages at the rate of time and one half for hours worked in excess of 40 in a single week. 29 U.S.C. § 207(o).  A covered employee merely has to demonstrate that her employer failed to pay her at the overtime rate on one occasion to make out a claim under the FLSA.  Lee v. ABC Carpet & Home, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) (citing Acosta v. Yale Club, 1995 U.S. Dist. LEXIS 14881, at *8, 94 Civ. 0888 (S.D.N.Y. Oct. 12, 1995)) ("[i]n FLSA cases involving overtime pay, a new cause of action accrues for purposes of § 255(a) at each regular payday immediately following the workweek during which services were rendered and for which overtime compensation is claimed."); see Franklin v. New York Law Publishing Co., 1995 U.S. Dist. LEXIS 9566, *3, 95 Civ. 1024 (S.D.N.Y. July 11, 1995) (accord).  Accordingly, no actual practice or policy is needed to find a violation of the FLSA when the employer has failed to pay overtime and the employee's non-exempt status is clear, as is the case here.

## POINT V

### THE DOE VIOLATED FLSA'S
### RECORDKEEPING REQUIREMENTS

Under the FLSA, the employer is required to preserve and maintain accurate and proper records of employees' wages, hours and other conditions of employment.  29 U.S.C. § 211(c).

The statute places the recordkeeping burden on the employer because the employer "is in position to know and to produce the most probative facts concerning the nature and amount of work performed." Anderson v. Mt. Clemens, 328 U.S. 680, 687 (1946). Thus, if the employer's records are inadequate, it is the employer's burden to refute plaintiffs' estimation of damages. Id.

The DOE told PCs and PSOs that they should and were responsible to keep a record of their compensatory time. (Pls. 56.1, ¶ 148)  During discovery the DOE failed to produce complete payroll data documenting plaintiffs' wages, hours and conditions of employment, from August 23, 2003 to the present. Clearly, the DOE's failure violates § 211(c).[7]

Defendants, through their counsel and their own expert, concede that plaintiffs' pre-October 2005 payroll records are unreliable so as to preclude accurate calculation of damages for that time period. (Pls. 56.1, ¶ 121) Also, plaintiffs' post October 2005 payroll records are incomplete to the extent that Dr. Erath was foreclosed from specifically accounting for overtime for the entire plaintiff class, reaching only a high of 148 plaintiffs, when even the DOE concedes that at a minimum, the class consists of 194 individuals. Dr. Erath states specifically that:

> The Cybershift data are not available for all plaintiffs, nor are they available for what I understand to be the entire relevant time period over which damages should be calculated. The data available to me covers 152 individuals but no consistent time period for these individuals. Primarily, the Cybershift data being on October 31, 2005 for 30 individuals; data for isolated plaintiffs are available earlier, but I have been advised that these early data may not be reliable and have consequently relied only on data beginning October 31, 2005. The number of individuals for whom data are available on any given day increases steadily with time, reaching a high of 148 in 2007.

---

[7] The complaint in this action was filed on February 2, 2007. Thus, at a minimum, DOE's FLSA liability extends to February 2, 2005. Plaintiffs contend that the DOE's FLSA liability extends to August 23, 2003 based upon the doctrine of equitable tolling, or at a minimum, to February 2, 2004 because the DOE willfully violated the FLSA.

Case 1:07-cv-00830-SAS   Document 244   Filed 09/09/08   Page 27 of 32

(emphasis added). Report of Christopher Erath, annexed as Exhibit J to Smith Aff. at 2.

Thus, the undisputed facts establish that DOE failed to maintain and preserve accurate, reliable and complete payroll data for plaintiffs. Accordingly, DOE violates the FLSA's recordkeeping provisions as a matter of law. 29 U.S.C. §211(c). See Harold Levinson Assocs., Inc. v. Chao, 2002 U.S. App. LEXIS 9796, at *2 (2d Cir. May 22, 2002) (employer violates the FLSA by failing to properly record plaintiffs' compensable overtime hours); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381, 388-390 (E.D.N.Y. 2007) (employer's sampling of weeks throughout the year and lack of two years worth of wage records violated the FLSA's recordkeeping provisions); Chao v. Vidtape, Inc., 196 F. Supp. 2d 281, 292-93 (E.D.N.Y. 2002) (employer violates the FLSA by failing to generate and preserve accurate payroll records and lack of records entirely for a portion of the liability period), aff'd in part and modified in part on other grounds at, 2003 U.S. App. LEXIS 10707 (2d Cir. May 29, 2003); Tran v. Tran, 2000 U.S. Dist. LEXIS 10946, *20-*21 (S.D.N.Y. Aug. 4, 2000) (employer violates recordkeeping provisions where pay records were inaccurate and no records existed for portion of plaintiffs employment period), modified in part on other grounds at, 281 F.2d 23 (2d Cir. 2002).

POINT VI

THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED

The doctrine of equitable tolling is rooted in fairness. Veltri v. Building Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004). It is "an extraordinary measure that applies only when a party is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances." Id.

The DOE failed to post notices or otherwise inform plaintiffs that FLSA protected their rights to overtime compensation. (Pls. 56.1, ¶¶ 107, 139, 141, 146) Further, the DOE

misinformed plaintiffs as to their right to be paid cash overtime and thereby, concealed the existence of plaintiffs' FLSA cause of action. The DOE's acts justify equitable tolling of the FLSA's statute of limitations. (Pls. 56.1, ¶¶ 105-06, 139-40)

> The FLSA's implementing regulations specifically require that:

>> Every employer employing any employees subject to the Act's minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.

29 C.F.R. § 516.4. Similar to other federally mandated posting requirements, § 516.4 "was undoubtedly created because Congress recognized that the very persons protected by the Act might be unaware of its existence." Bonham v. Dresser Indus., Inc., 569 F.2d 187, 193 (3d Cir. 1977) (discussing ADEA posting requirement at 29 U.S.C. § 627). This Court, in Ramirez v. CSJ & Co., Inc., specifically stated with respect to FLSA's posting requirement that "employers that fail to post the required notices take advantage of the defenseless in a very real way, whether out of venality or otherwise. In any case, they frustrate legislative objective of protecting those most in need of protection." 2007 U.S. Dist. LEXIS 28901, at *7 (S.D.N.Y. Apr. 3, 2007).

The DOE concedes that it failed to post the requisite statutory notice of plaintiffs' FLSA rights. (See Pls. 56.1, ¶ 107) In addition, they otherwise failed to inform plaintiffs of their statutorily protected right to cash overtime at time and one-half. See Brodsky Decl. ¶ 4, annexed to Voigt Decl. (no discussion of overtime compensation during DOE's 2003 orientation meetings with plaintiffs); PC HR Guide, annexed as Exhibit A to Voigt Decl. (no citation to FLSA protection of plaintiffs' right to cash overtime at time and one-half). Rather, when questioned, the DOE denied to plaintiffs that they were entitled to cash overtime. The DOE engaged in such

practices without ever explicitly informing plaintiffs that the FLSA protected their right to overtime pay. (Pls. 56.1, ¶¶ 139, 141, 146)

As a result of DOE's admitted unlawful failure to post the required notices and demonstrated practice of obscuring the existence of plaintiffs' overtime rights under the FLSA, DOE effectively concealed plaintiffs' FLSA causes of action.  Accordingly, plaintiffs are entitled to equitable tolling of the statute of limitations to August 2003.  See Veltri, 393 F.3d at 322 (failure to provide plaintiff with statutory notice of claim under ERISA warrants equitable tolling because such failure conceals the existence of the cause of action); U.S. v. Mahender, 2008 U.S. Dist. LEXIS 55108, at *15 (E.D.N.Y. Jul. 19, 2008) (equitable tolling of FLSA claim warranted where employer failed to post notice of FLSA rights and employees did not have notice that their overtime rights were FLSA protected); Kamens v. Summit Stainless, Inc., 586 F.Supp. 324, 328 (E.D.Pa. 1984) (accord).

POINT VII

PLAINTIFFS ARE ENTITLED TO THE APPLICATION OF<br>THE THREE YEAR STATUTE OF LIMITATIONS

The statute of limitations for a FLSA claim is two years for a non-willful violation and three years for a willful violation.  See 29 U.S.C. § 255(a).  A FLSA violation is willful if an employer either "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 130-31 (1988).  In this context the word "willful" refers to conduct that is "voluntary," "deliberate," or "intentional," and not merely negligent. Id., 486 U.S. at 133.

DOE knew they were obligated to comply with the FLSA's overtime wage provisions with respect to plaintiffs.  In 1985, the Supreme Court in Garcia v. San Antonio Metro Transit Auth., extended the FLSA to make its maximum hours and overtime wage provisions applicable

to state and local government employees. 469 U.S. 528 (1985).  In 2003, when the PC and PSO positions were created, DOE was on notice that the FLSA was applicable to those employees. As such, the FLSA is specifically referenced throughout their departmental rules governing plaintiffs' titles.    (See generally, Rules and Regulations Governing Non-Pedagogical Administrative Employees (Pls. 56.1, ¶¶ 98, 105))

The DOE willfully violated the FLSA because they knew of their FLSA duty to pay plaintiffs cash overtime and still failed to comply.  Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995) (where law was clear that FLSA's overtime provisions were applicable to plaintiffs and employer failed to comply, its violation of FLSA was willful); Chao v. Vidtape, Inc., 196 F. Supp. 2d at 295-96 (where employer admitted knowledge of FLSA obligations but nonetheless committed extensive violations of overtime and minimum wage provisions, FLSA violation was willful).

The DOE also recklessly disregarded their duty to pay plaintiffs overtime in accordance with the FLSA.  DOE's failure to keep proper wage records, alone, is sufficient to establish willfulness.  See supra at Point V; see also, Harold Levinson Assocs. Inc. v. Chao, 2002 U.S. App. LEXIS 9796 at **9-**10 (where employer failed to implement proper recordkeeping even after receiving notice of investigation of FLSA compliance from the DOL, violation was willful); Tran v. Tran, 2000 U.S. Dist. LEXIS 10946, at *26 (evidence demonstrating that employer failed to keep adequate and accurate records of employees' work and payments to employees established willful violation of the FLSA"); Moon v. Kwon, 248 F. Supp. 2d 201, 231-32 (S.D.N.Y. 2002) (employer who admitted knowledge of the FLSA, violated its recordkeeping requirements, and knew that plaintiff had not received overtime pay willfully violated the statute).  In addition, DOE failed to post the required notice informing plaintiffs of their FLSA

rights, despite the fact that FLSA's implementing regulations explicitly required DOE to do so.
See 29 C.F.R. § 516.4. DOE's counsel "concedes that DOE did not post FLSA notices in the
work places of plaintiffs." (Pls. 56.1, ¶ 107)

Clearly, the DOE's violation of the FLSA was not the result of mere negligence. The
undisputed facts evince DOE's knowledge and reckless disregard of plaintiffs' FLSA rights.
Herman v. RSR Security Servs. Ltd., 172 F.3d 132, 141-42 (2d Cir. 1999) (employer who was
on notice of the possibility that pay practice violated FLSA and yet failed to investigate the
matter, willfully violated the statute); Cox v. Town of Poughkeepsie, 209 F.Supp.2d 319, 328
(S.D.N.Y. 2002) (employer who received notice of plaintiffs' FLSA claim and thereafter failed
to investigate its FLSA compliance, willfully violated the statute). Because the DOE willfully
violated the FLSA, the statute of limitations for plaintiffs' FLSA claims, at a minimum, should
extend to February 2, 2004, three years from the date that this action was filed.

## POINT VIII

## PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES

An employer who violates the minimum compensation provisions of the FLSA is liable
for both past due wages and, in addition, an equal amount of liquidated damages." 29 U.S.C. §
216(c); see also Reich v. Southern New England Telecomm. Corp., 121 F.3d 58, 70 (2d Cir.
1997). "Liquidated damages under the FLSA are considered to be compensatory rather than
punitive in nature." Reich, 121 F.3d at 71. They represent the employees' damages "occasioned
by the delay in receiving wages due caused by the employer's violation of the FLSA." Herman
v. RSR, 172 F.3d at 142 (citations omitted). "Normally, when an employer is found liable for
unpaid minimum wages or overtime, the full award of liquidated damages provided for by the
statute is mandatory." Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (citing

29 U.S.C. § 216(b) (liquidated damages "shall" be awarded)).  The Court, however, has the discretion to reduce or deny liquidated damages only if the employer demonstrates that despite the failure to pay appropriate wages, it acted in subjective good faith and had objectively reasonable grounds for believing that the acts or omissions giving rise to the failure did not violate the FLSA. Reich, 121 F.3d at 70-71.

Here, the DOE cannot demonstrate it acted in subjective good faith or possessed objectively reasonable grounds in its failure to pay plaintiffs overtime or maintain and preserve appropriate wage and hour records in accordance with FLSA. See supra at Points II, IV, V, VI and VII. Accordingly, plaintiffs are entitled to liquidated damages under the FLSA. Herman v. RSR, 172 F.3d at 142 ("[t]he employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception.") (internal citations omitted); Reich, 121 F.3d at 71 (strong presumption in favor of doubling plaintiffs' FLSA award.)

CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court deny defendants' motion for partial summary judgment in its entirety and grant plaintiffs' motion for partial summary judgment in its entirety, and award plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 9, 2008

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH, LLP

By: _____
Ivan D. Smith (IS-2659)
Attorneys for Plaintiffs
ismith@lbbslaw.com