**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X

CYNTHIA SAUNDERS, *et al.*,

              **Plaintiffs,**

   **- against -**

THE CITY OF NEW YORK and THE
DEPARTMENT OF EDUCATION OF THE
CITY OF NEW YORK,

        **Defendants.**

-------------------------------------------------------- X

**OPINION AND ORDER**

**07 Civ. 830 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/08

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.     INTRODUCTION

Plaintiffs, approximately 194 current and former municipal employees, filed this collective action against defendants, the City of New York ("City") and the New York City Department of Education ("DoE"), pursuant to the Fair Labor Standards Act ("FLSA").[1] Plaintiffs assert that defendants systematically violated their overtime rights under the FLSA and have brought the following claims: (1) defendants failed to pay them at the rate of time-and-one-half for hours worked over forty in a workweek (the "overtime claim"); (2)

---

[1]     29 U.S.C. §§ 201-219.

defendants failed to pay them for hours worked between thirty-five and forty in a workweek (the "failure to pay claim"); and (3) defendants wrongfully converted their compensatory time to sick leave after ninety days or otherwise prevented them from using it (the "denial of use claim"). With regard to each of these damages claims, plaintiffs assert that the statute of limitations should be equitably tolled because defendants interfered with their ability to seek relief in a timely manner by failing to post required notices and by misinforming them concerning their statutory rights.

The parties now cross-move for partial summary judgment. Plaintiffs request partial summary judgment on the overtime claim on three separate grounds: (1) defendants failed to pay overtime in cash; (2) defendants failed to provide payment for all hours worked over forty in a workweek; and (3) defendants paid at straight time instead of time-and-one-half for hours worked over forty in a workweek. Finally, plaintiffs seek equitable tolling of the statute of limitations as a matter of law on two separate grounds: (1) defendants failed to post the required Department of Labor FLSA notices; and (2) defendants willfully violated the FLSA.

Defendants also seek partial summary judgment on the following grounds: 1) the payment of compensatory time as overtime compensation did not

2

violate the FLSA; 2) defendants permitted use of accrued compensatory time in accordance with statutory requirements; and 3) there is no evidence of an "actual practice" to pay plaintiffs at straight time instead of time and one half for hours worked over forty in a workweek.

For the reasons stated below, plaintiffs' motion is granted in part and denied in part, while defendants' motion is denied in full.  In addition, the Court grants summary judgment *sua sponte* in favor of defendants concerning the failure to pay claim.

## II.    BACKGROUND[2]

### A.    Work Activities

Plaintiffs are Parent Coordinators ("PC") and Parent Support Officers ("PSO") employed by the New York City Department of Education.[3]  These positions were created in 2003 under DoE's Children First Reform Agenda to

---

[2]    A great number of facts in this case remain in dispute.  The facts recited here are undisputed.

[3]    *See* Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Def. 56.1") ¶ 1.

support and enhance parental involvement.[4]  There are approximately 1,400 PCs
and eighty PSOs.[5]

Each New York public school is assigned one PC, who works under
the supervision of the principal.[6]  The specific duties of PCs include: "engag[ing]
parents in their children's education, addressing parent and school community
concerns, convening and attending parent meetings, working with the school's
parent association, serving as a liaison to DoE central and regional parent support
staff, and maintaining contact with community organizations."[7]  PSOs serve
individual DoE regions, with the number of districts within each region
determining the allocation of PSOs.[8]  They support PCs and present professional
development workshops, although they have no supervisory authority over PCs.[9]

---

[4]   *See id.* ¶ 2.

[5]   *See id.* ¶¶ 4-5.

[6]   *See id.* ¶¶ 4, 10.

[7]   *Id.* ¶ 10.

[8]   *See id.* ¶ 5.

[9]   *See id.* ¶ 14.

**B.     Written Terms of Employment**

The terms and conditions of plaintiffs' employment are established in the collective bargaining agreement ("CBA") between the DoE and Local 372, District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME"), who are plaintiffs' bargaining representatives.[10] PCs and PSOs serve year round and are required to work thirty-five hours per work week.[11] Their positions are intended to be flexibly scheduled in order to accommodate "the needs of parents, including early mornings, evenings and weekends."[12] The CBA is silent concerning overtime compensation, specifically whether PCs and PSOs working overtime may be compensated with compensatory time off rather than cash.[13]

---

[10]     *See id.* ¶¶ 22-23. By its terms, the CBA was effective from April 1, 2000 through June 30, 2005. *See id.* at ¶ 23. The parties have not presented facts concerning a subsequent contract, if it exists.

[11]     *See id.* ¶ 6.

[12]     *Id.* ¶¶ 15-20. Plaintiffs claim, however, that some principals did not allow their PCs to work a flexible schedule because those principals wanted PCs available at particular times. *See* Plaintiffs' Amended Response to Defendants' Statement of Undisputed Facts and Plaintiffs' Amended Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Pl. Am. 56.1") ¶ 15. Similarly, plaintiffs allege that some PSOs did not work a flexible schedule. *See id.* ¶ 17.

[13]     *See* Def. 56.1 ¶ 24.

5

The issue of overtime compensation is addressed separately in an information manual, the "Parent Coordinator Human Resources Guide" ("PC HR Guide"), which DoE's Division of Human Resources ("HR Division") distributed to its staff, school principals, and school secretaries.[14]  The PC HR Guide provides in relevant part:

> With the prior approval of the principal, parent coordinators may work an additional five hours per week and receive compensatory time. Compensatory time is strictly limited to time worked between thirty-five and forty hours in a week and results in a straight time credit for each additional hour of work. Time above forty hours is credited as time and one-half and must be compensated for in cash through the payroll system. There is no provision to credit time worked above forty hours in any given week as compensatory time. The <u>Verification of Compensatory Time or Paid Overtime Performed by the Parent Coordinator</u> form in the appendix to this guide should be used to recover and approve compensatory time and overtime.[15]

---

[14]     *See id.* ¶ 36.

[15]     PC HR Guide at 3, Ex. A to Declaration of Diana Goell Voight in Support of Defendants' Motion for Partial Summary Judgment ("Voight Decl."). There is a dispute over whether the Verification Form was the only way PCs recorded their overtime. Plaintiffs allege that in practice, at least before the introduction of an electronic database, overtime hours were recorded on regular time sheets and did not require an additional form.  *See* Pl. 56.1 ¶ 37.

The PC HR Guide explains that principals may use discretionary funds in their

budgets to pay cash overtime to PCs.[16]

The DoE's overtime policy concerning PCs and PSOs was also

detailed in a supplement entitled, "Rules and Regulations Governing Non-

Pedagogical Administrative Employees" ("Admin Rules").[17]  Section 7 of the

Admin Rules concerns overtime, and provides in relevant part:

> 7.3. Eligible employees who work overtime in excess of the
> number of hours in their regular workweek but less than
> forty hours are paid at their basic hourly rate for overtime.
> Monetary payments shall be made at the rate of one and
> one-half times the employee's basic hourly rate for overtime
> worked in excess of forty hours in the employee's regular
> workweek.
>
> 7.5. No credit shall be recorded for unauthorized overtime
> . . . .
>
> 7.6. Employees for whom cash payment for overtime is not
> permitted, and for whom the granting of compensatory
> time for overtime is permitted will receive compensatory
> time in an hour for hour basis for overtime worked up to a
> forty hour week and time and one-half for overtime worked
> in excess of a forty hour week.[18]

---

[16]     *See* Pl. 56.1 ¶¶ 37-38.

[17]     *See id.* ¶ 39.

[18]     Admin Rules at 22, Ex. A to Voight Decl.  Plaintiffs assert that in
practice, pre-approval was not always required for PCs before working overtime.
*See* Pl. Am. 56.1 ¶¶ 47-48.  Plaintiffs also allege that pre-approval was never

It is the normal practice of the DoE either to post copies of its employment

policies on its website, or to send them to AFSCME.[19]  DoE did not post FLSA

notices in schools.[20]

Additionally, when PCs were first hired in 2003, DoE conducted

several orientation sessions to familiarize PCs with their positions and to explain

accompanying benefits.[21]  These meetings were attended either by Lawrence

Becker, Chief Executive Officer of DoE's HR Division, or his representative, as

well as AFSCME representatives.[22]  Among the topics addressed were salary

range, hours and scheduling, and annual leave and vacation.[23]

Follow-up meetings clarifying professional development and work

rules, as well as issues related to plaintiffs' schedules, were offered monthly or bi-

---

required for PSOs before they could work overtime.  *See id.* ¶ 50.

[19]     *See* Def. 56.1 ¶ 40.

[20]     *See* Defendants' Response to Plaintiffs' Amended Response to
Defendants' Statement of Undisputed Facts and Plaintiffs' Amended Statement of
Undisputed Facts Pursuant to Local Civil Rule 56.1 ¶ 107.

[21]     *See* Def. 56.1 ¶¶ 27-28.

[22]     *See id.* ¶¶ 29, 31.

[23]     *See id.* at ¶ 30.

monthly.[24]  In at least some regions, the meetings addressed the dearth of money available for overtime, and regional directors suggested that PCs and PSOs should avoid working more than thirty-five hours in a week.[25]

### C.   Overtime Compensation in Practice

Despite its written policy specifying that overtime above forty hours would be paid in cash, DoE changed its practice in light of the limited funds in schools' discretionary budgets and provided compensatory time instead.[26] AFSCME never filed a grievance on behalf of plaintiffs to challenge the form of overtime payment, although it had the ability to do so pursuant to both CBA and New York Public Employment Relations Board grievance procedures.[27]

## III.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[24]      *See* Def. 56.1 ¶ 42.

[25]      *See id.* ¶¶ 43, 46; Pl. Amen. 56.1 ¶ 143.

[26]      Neither party has presented any evidence as to when this change occurred.

[27]      *See* Def. 56.1 ¶ 70.

party is entitled to judgment as a matter of law."[28]  An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[29]  A fact is material when it "'might affect the outcome of the suit under the governing law.'"[30]  "It is the movant's burden to show that no genuine factual dispute exists."[31]

In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

---

[28]     Fed. R. Civ. P. 56(c).

[29]     *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (quoting *Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998)).

[30]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005)).

[31]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

will bear the burden of proof at trial.'"[32]  To do so, the non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[33] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[34]  However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[35]

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.[36]  However, "[i]t is a

---

[32]     *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  *Accord In re September 11 Litig.*, No. 21 MC 97, 2007 WL 2332514, at *4 (S.D.N.Y. Aug. 15, 2007) ("Where the nonmoving party bears the burden of proof at trial, the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.") (quotation omitted).

[33]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[34]     *Jeffreys*, 426 F.3d at 554 (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2002)).

[35]     *McClellan*, 439 F.3d at 144 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)).

[36]     *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 456 (2d Cir. 2007) (citing *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[37]  Summary judgment is therefore "only appropriate when there is no genuine issue as to any material fact, making judgment appropriate as a matter of law."[38]

### B.   Statutory Interpretation

Statutory interpretation "necessarily begins with the 'plain meaning' of a law's text and, absent ambiguity, will generally end there."[39]  Such analysis looks both "to the particular statutory language at issue" and to "the language and design of the statute as a whole."[40]  If and only if the text is ambiguous, "the court may resort to legislative history to determine the statute's meaning."[41]  However, when opening the door to legislative history, the court must be cautious to "construct an interpretation that comports with [the statute's] primary purpose and

---

[37]     *McClellan*, 439 F.3d at 144 (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).  *Accord Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).

[38]     *Karpova v. Snow*, 497 F.3d 262, 270 (2d Cir. 2007) (citing *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 486-87 (2d Cir. 2006)).

[39]     *Collazos v. United States*, 368 F.3d 190, 196 (2d Cir. 2004).

[40]     *K Mart Corp. v. Cartier*, 486 U.S. 281, 291 (1988).

[41]     *Puello v. Bureau of Citizenship and Immigration Servs.*, 511 F.3d 324 (2d Cir. 2007).

does not lead to anomalous or unreasonable results."[42]  The hierarchy of legislative history values committee reports over floor statements and floor statements by key legislative drafters and sponsors over floor statements of other members of Congress.[43]

### C.   Administrative Deference

The U.S. Department of Labor ("DoL") has issued voluminous regulations to facilitate proper compliance with the overtime provisions of FLSA.[44]  Regardless of whether these rules are labeled as "regulations" or "interpretations," they are entitled to *Chevron* deference.[45]  Under this standard, courts follow a two-step procedure to review an agency interpretation of a federal

---

[42]     *Connecticut ex rel. Blumenthal v. U.S. Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000).

[43]     *See Garcia v. United States*, 469 U.S. 70, 76 (1984) ("In surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill."); *United States v. Indelicato*, 865 F.2d 1370, 1382 (2d Cir. 1989) (deferring to the floor statement of a legislative sponsor).

[44]     *See* 29 C.F.R. §§ 553.1-.233, 778.0-.603, 785.1-.50.

[45]     *See Long Island Care at Home, Ltd. v. Coke*, — U.S. —, 127 S. Ct. 2339 (2007).  *See also* Fair Labor Standards Amendments of 1985, Pub. L. No. 99-150, § 6, 99 Stat. 787, 790 (codified at 29 U.S.C. § 203 note) (directing the Secretary of Labor to promulgate regulations concerning compensatory time).

statute.[46]  A court must first determine whether the "intent of Congress is clear" and the meaning of the statute is unambiguous.  If congressional intent as to the disputed issue is clear, then a contrary administrative construction must be rejected.[47]  However, if a court finds that the statute is "silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."[48]

However, not all DoL pronouncements are given such weight. "Interpretations such as those in opinion letters . . . policy statements, agency manuals, and enforcement guidelines[ –] all of which lack the force of law – do not warrant *Chevron*-style deference."[49]  Rather such interpretations are "'entitled to respect'" only to the extent that they have the "'power to persuade.'"[50]  The full measure of deference is accorded to such informal materials only when they

---

[46]     *See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).

[47]     *See id.* at 842-43.

[48]     *Id.* at 843.

[49]     *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

[50]     *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

clarify an ambiguity in the agency's own regulations.[51]  The preamble to formal

regulations is an example of materials to which strong deference is due when

construing regulations but not when construing the governing statute.[52]

## IV.  APPLICABLE LAW

### A.  The Fair Labor Standards Act and Public Employees

Congress enacted the FLSA in order to ensure "'a fair day's pay for a

fair day's work.'"[53]  Amendments to the Act in 1966 and 1974 extended its

coverage to most public employers, although implementation at the local level was

delayed until 1985, when the Supreme Court held in *Garcia v. San Antonio

Metropolitan Transit Authority*[54] that Congress had the authority to regulate

employment by states and municipalities.[55]  In the aftermath of *Garcia*, Congress

passed the Fair Labor Standards Amendments of 1985, which reduced the costs of

---

[51]     *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *See also Christensen*, 529 U.S. at 588 (describing a unique category of "*Auer* deference").

[52]     *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 158 n.13 (1982).

[53]     *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 283 (2d Cir. 2008) (quoting 81 Cong. Rec. 4983 (1937) (message of President Roosevelt)).

[54]     469 U.S. 528 (1985).

[55]     *See Moreau v. Klevenhagen*, 508 U.S. 22, 25-26 (1993) (citations omitted).

15

the mandatory overtime differential by allowing states and municipalities to provide alternative compensation in the form of compensatory time.[56] Recognizing that "unlike private employers, public employers cannot pass the operating costs associated with overtime pay to consumers,"[57] Congress implemented a regime designed to balance workers' rights to time-and-a-half compensation for overtime work against states and municipalities needs for operational flexibility and protection of the public fisc.[58]

Workers can enforce their FLSA rights by initiating legal actions for themselves and on behalf of other similarly situated employees. Specifically, the statute authorizes "one or more employees" to initiate suit "for and in behalf of himself or themselves and other employees similarly situated.[59]

---

[56]   *See* 29 U.S.C. § 207(o).  *See also Christensen*, 529 U.S. at 578-79 (laying out the legislative history).

[57]   *Collins v. Lobdell*, 188 F.3d 1124, 1129 (9th Cir. 1999).

[58]   *See* S. Rep. No. 99-150, at 11 (1985).  *See also Christensen*, 529 U.S. at 585.

[59]   29 U.S.C. § 216(b).

### B.     Overtime Payment

The FLSA requires that employers provide overtime compensation for any work beyond forty hours in a single workweek.[60]  As described above, the FLSA Amendments of 1985 instituted a system by which states and municipalities could make overtime payments to employees with compensatory time off rather than cash compensation.[61]  This system maintained the FLSA's governing policy of compensating workers for overtime at time-and-one-half in order to deter over-work, but it allowed compensation in a form that would not overburden local coffers.[62]  Thus any construction of the compensatory time provisions must balance "concern for ensuring that the employee receive[s] some timely benefit for overtime work" against a congressional intent "to mitigate the effects of applying the FLSA."[63]

### 1.     Choice of Compensatory Time or Cash Payment

---

[60]     *See* 29 U.S.C. § 207(a)(1).  Exceptions to this rule exist for specific categories of employees.  *See, e.g.*, 29 U.S.C. § 207(k) (law enforcement or fire protection); 29 U.S.C. § 207(m) (tobacco industry).

[61]     *See id.* § 207(o).

[62]     *See id.* § 207(o)(1) (providing compensatory time "at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required").

[63]     *Christensen*, 529 U.S. at 579, 584.

Compensatory time may only be provided in place of cash overtime pursuant to "applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees."[64] Alternately, employees who are not part of a collective bargaining unit may receive compensatory time pursuant to "an agreement or understanding arrived at between the employer and employee before the performance of the work."[65] "Employers and employees are required to negotiate and reach agreements over the use and preservation of comp time,"[66] and the resulting agreement "may provide for any combination of compensatory time off and overtime payment in cash."[67] So long as the agreement does not violate the FLSA, it may govern any aspect of the compensatory time arrangement.[68] Moreover, informal agreements will only be recognized "in the absence of a collective bargaining agreement applicable to the employees."[69]

---

[64] 29 U.S.C. § 207(o)(2)(A)(I). *See also Moreau,* 508 U.S. at 26-27 (outlining the structure and purpose of the provision).

[65] *Id.* § 207(o)(2)(A)(ii).

[66] *Collins,* 188 F.3d at 1130.

[67] 29 C.F.R. § 553.23(a)(2).

[68] *See id.* § 553.23(a)(2), (b)(1).

[69] *Id.* § 553.23(b)(1).

## 2.    Use of Compensatory Time

An employee's election to use accrued compensatory time is

governed by section 207(o)(5) of Title 29 of the United States Code, which states:

> An employee of a public agency which is a State, political
> subdivision of a State, or an interstate governmental
> agency who has accrued compensatory time off authorized
> to be provided . . . , and who has requested the use of such
> compensatory time, shall be permitted by the employee's
> employer to use such time within a reasonable period after
> making the request if the use of the compensatory time
> does not unduly disrupt the operations of the public
> agency.

The "reasonable period" requirement "refers to the time period between the date

for which the employee applies for leave and the date on which that leave is

actually granted."[70]  Given both this reasonableness standard and the undue

disruption exception to an otherwise unreasonable delay, employers are not

obligated to grant compensatory time on the precise day an employee requests it.[71]

"Whether a request to use compensatory time has been granted within

a 'reasonable period' will be determined by considering the customary work

---

[70]     *Scott v. City of New York*, 340 F. Supp. 2d 371, 380 (S.D.N.Y. 2004).
*Accord Parker v. City of N.Y.*, No. 04 Civ. 4476, 2008 WL 2066443, at *7
(S.D.N.Y. May 13, 2008) (same).

[71]     *See, e.g.*, *Mortensen v. City of Sacramento*, 368 F.3d 1082, 1084 (9th
Cir. 2004); *Houston Police Officers' Union v. City of Houston*, 330 F.3d 298, 304
(5th Cir. 2003); *Parker*, 2008 WL 2066443, at *7.

19

practices within the agency based on the facts and circumstances in each case."[72]
This flexible standard does not impose a per se requirement that employers include
alternative dates on which compensatory time might be taken when denying a
compensatory time request.[73]

The undue disruption provision serves as a safety valve within the
compensatory time scheme, protecting public agencies' operational capacity from
being harmed by the absence of vital employees. DoL regulations clarify this
standard by stating: "Mere inconvenience to the employer is an insufficient basis
for denial of a request for compensatory time off."[74] Moreover, "a financial
burden . . . does not on its own[] rise to the level of an undue disruption," as this
would undermine the FLSA policy of creating a financial disincentive to overwork
individual employees.[75] An undue disruption must be more than a "mere

---

[72]     29 C.F.R. § 553.25(c)(1).

[73]     *See Parker*, 2008 WL 2066443, at *7; *Heitmann v. City of Chicago*
("*Heitmann II*"), Nos. 04 C 3304, 04 C 5714, 2008 WL 506111, at *5 (N.D. Ill.
Feb. 21, 2008) ("[T]he CPD has no obligation to provide an alternative date on
which the sworn member could take FLSA compensatory time; instead the sworn
member must make a new request.").

[74]     29 C.F.R. § 553.25(d).

[75]     *Parker*, 2008 WL 2066443, at *7.  *Accord Beck v. City of Cleveland*,
390 F.3d 912, 921 (6th Cir. 2004); *Heitmann v. City of Chicago* ("*Heitmann I*"),
Nos. 04 C 3304, 04 C 5714, 2007 WL 2739559, at *18 (N.D. Ill. Sept. 11, 2007).
*DeBraska v. City of Milwaukee*, 131 F. Supp. 2d 1032, 1037 (E.D. Wis. 2000).

inconvenience" and must "impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public."[76]

## C.     Cash Overtime Rates

When public employers provide cash compensation for overtime, they are covered by the same law that governs private employers.[77]  Under the FLSA, cash overtime must amount to "a rate not less than one and one-half times the regular rate at which [the worker] is employed."[78]  "While the words 'regular rate' are not defined in the Act, they obviously mean the hourly rate actually paid for

---

*But see Mortensen*, 368 F.3d at 1090 (holding that a construction of compensatory time provisions that would increase public employer's costs runs contrary to the legislative purpose of the 1985 amendments).

[76]     29 C.F.R. § 553.25(d).

[77]     *See id.* § 553.26(b).

[78]     29 U.S.C. § 207(a)(1).  Executive, administrative and professional employees are exempt from the requirement that employers pay time-and-a-half overtime compensation for hours worked above forty in a workweek. *See id.* § 213(a)(1).  To be an executive, administrator or professional, and thus exempt from overtime, an employee must work "on a salary basis." *Id.* § 213(a)(1).  This means that the employee must "receive his full salary for any week in which he performs any work" and that his salary is not "subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118 (a).  Exemptions to the Act must be "narrowly construed against the employers seeking to assert" them. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). "[A]n employer bears the burden of proving that its employees fall within an exempted category of the Act." *Martin v. Malcolm Pirnie, Inc.,* 949 F. 2d 611, 615 (2d Cir. 1991) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974)).

the normal, non-overtime work[ period]."[79]  "As the regular rate of pay cannot be

left to a declaration by the parties as to what is to be treated as the regular rate for

an employee, it must be drawn from what happens under the employment

contract."[80]  The regular rate is  "'properly calculated by adding all of the wages

payable for the hours worked . . . and dividing by the total number of hours

worked.'"[81]

### D.     Statute of Limitations

"The FLSA generally provides for a two-year statute of limitations on

actions to enforce its provisions, but allows a three-year limitations period for 'a

cause of action arising out of a willful violation.'"[82]  "The fact that Congress did

not simply extend the limitations period to three years, but instead adopted a

two-tiered statute of limitations, makes it obvious that Congress intended to draw

a significant distinction between ordinary violations and willful violations."[83]

---

[79]     *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944).  *Accord Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 595 (2d Cir. 2007).

[80]     *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 464 (1948).

[81]     *Gorman*, 488 F.3d at 596 (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 14 (2d Cir. 1987)).

[82]     *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 141 (2d Cir. 1999) (quoting 29 U.S.C. § 255(a)).

[83]     *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988).

Proof of willfulness requires a factual showing that the employer either "'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"[84] To show that a FLSA violation is willful, an employee must prove that the employer was more than negligent.[85] Neither an employer's "good-faith but incorrect assumption" regarding its FLSA obligations, nor an employer's lack of a reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.[86] It is the plaintiffs' burden to show willfulness.[87]

Under appropriate circumstances, statutory or equitable tolling may suspend the running of the statute of limitations.[88] "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances."[89] Equitable tolling is only to be applied "in rare

---

[84]    *Porter v. New York Univ. School of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (quoting *McLaughlin,* 486 U.S. 128 at 133 (alteration in original)).

[85]    *See McLaughlin*, 486 U.S. at 135.

[86]    *Id.*

[87]    *See id.* at 133.

[88]    *See United States v. Sabhnani*, 566 F. Supp. 2d 139, 145 (E.D.N.Y. 2008).

[89]    *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996).

and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights."[90]  "Courts have found extraordinary circumstances to exist if an employee shows that it would have been impossible for a reasonably prudent person to learn of the cause of action, or if the defendant concealed from the plaintiff the existence of the cause of action."[91]  "The Second Circuit has considered two factors in determining whether equitable tolling is applicable: '[W]hether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.'"[92]

> DoL regulations mandate,
>
>> Every employer employing any employees subject to the [FLSA's] minimum wage provisions shall post and keep posted a notice explaining the Act, as prescribed by the Wage and Hour Division, in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy.[93]

---

[90]    *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (citation omitted).

[91]    *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (internal citations omitted).

[92]    *Id.* (quoting *Zerilli-Edelglass*, 333 F.3d at 80-81).

[93]    29 C.F.R. § 516.4.

24

"[F]ailure to comply with the regulatory obligation to disclose the existence of a
cause of action . . . is the type of concealment that entitles plaintiff to equitable
tolling of the statute of limitations."[94]  However, a "plaintiff who has actual
knowledge of the right to bring a judicial action . . . may not rely on equitable
tolling notwithstanding inadequate notice even if an employer fails to comply with
posting requirements . . . ."[95]  Moreover, "a plaintiff, who would otherwise be
entitled to rely 'on equitable tolling on the basis of defective notice,'" forfeits that
right if he or she "failed to exercise due diligence to the prejudice of the
defendant."[96]

## V.   DISCUSSION

### A.   The Overtime Claim

#### 1.   Use of Compensatory Time

Plaintiffs and defendants cross-move for summary judgment
concerning defendants' use of compensatory time as overtime compensation.
There is no factual dispute that plaintiffs received compensatory time for hours

---

[94]     *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 324 (2d Cir.
2004).

[95]     *Id.* at 326.

[96]     *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 183 (2d Cir.
2008) (quoting *Veltri*, 393 F.3d at 326).

25

worked over forty in a workweek, but defendants claim that an understanding

existed concerning the form of overtime compensation. The sole question is

whether an employee who is a member of a collective bargaining unit may

independently agree to receive compensatory time instead of cash when the CBA

is silent concerning overtime compensation.

Although neither the Supreme Court nor the Second Circuit have

explicitly addressed this issue, the question is easily resolved by looking to the

text of the FLSA:

> A public agency may provide compensatory time . . . *only*
> . . . pursuant to . . . (i) applicable provisions of a collective
> bargaining agreement, memorandum of understanding, or
> any other agreement between the public agency and
> representatives of such employees; or (ii) *in the case of
> employees not covered by subclause (i)*, an agreement or
> understanding arrived at between the employer and
> employee before the performance of the work.[97]

The phrase "employees . . . covered by subclause (i)" is most sensibly read as

referring to employees who have designated a bargaining representative to

negotiate with their employer on "applicable provisions of a collective bargaining

---

[97]     29 U.S.C. § 207(o)(2)(a) (emphasis added).

agreement" authorizing compensatory time.[98]  Whether the bargaining

representative actually acts on his or her authority to do so is irrelevant.

Bifurcation of the statutory text limits the use of individual

agreements to employees without bargaining representatives.  If an employer

could craft individual agreements with represented employees, it would render the

restrictive phrasing of subclause (ii) a nullity.  "Had Congress intended such an

open-ended authorization of the use of comp time, it surely would have said so

more simply, forgoing the elaborate subclause structure that purports to restrict

use of individual agreements to a limited class of employees."[99]  Moreover,

allowing employers to negotiate directly with represented employees would

unjustifiably subvert the power of a collective bargaining unit.

DoL regulations support this textual analysis.[100]  DoL regulations

provide that, where employees have designated a bargaining agent, a

---

[98]     *Id.*

[99]     *Moreau*, 508 U.S. at 33.  In dicta, the Supreme Court noted the chaos
that would result from direct negotiation with represented employees.  *See id.* at
33 n.15.

[100]    Even assuming *arguendo* that the FLSA is ambiguous with respect to
whether individual agreements concerning compensatory time can be made with
represented employees, this Court would be required to defer to these formal DoL
interpretations under *Chevron* and its progeny.

27

compensatory time agreement must be between that bargaining agent and the

employer. In relevant part, the regulation states:

> *Where employees have a representative*, the agreement or
> understanding concerning the use of compensatory time
> *must be between the representative and the public agency*
> either through a collective bargaining agreement or through
> a memorandum of understanding or other type of oral or
> written agreement.[101]

Alternately:

> Where employees of a public agency *do not* have a
> recognized or otherwise designated representative, the
> agreement or understanding concerning compensatory time
> off must be between the public agency and the individual
> employee and must be reached prior to the performance of
> work.[102]

An interpretation prohibiting individual agreements when a

bargaining agent is appointed to represent employees is also consistent with the

House and Senate reports recommending enactment of the 1985 amendments to

---

[101]    29 C.F.R. § 553.23(b)(1) (emphasis added).

[102]    *Id.* § 553.23(c)(1) (emphasis added). To support their claim that
agreements with individual employees are valid under the FLSA, defendants point
to a footnote in *Christensen*, which states that an agreement or understanding
regarding compensatory time for overtime hours "need not be formally reached
and memorialized in writing, but instead can be arrived at informally, such as
when an employee works overtime knowing that the employer rewards overtime
with compensatory time." *Christensen*, 529 U.S. at 579 n.1. Defendants fail to
note that the Court was addressing employees without a bargaining representative.
*See id.* (citing 29 C.F.R. § 553.23(c)(1)).

the FLSA.  The Senate Committee on Labor and Human Resources noted: "Where

employees have a recognized representative, the agreement or understanding *must*

be between that representative and the employer, either through collective

bargaining or through a memorandum of understanding or other type of

agreement."[103]  Similarly, the House Report explained: "Where employees have

selected a representative . . . the agreement or understanding *must* be between the

representative and the employer."[104]

      The FLSA provision governing compensatory time is thus most

reasonably interpreted as allowing individual agreements accepting such payment

in lieu of cash only when employees do not have a bargaining agent.[105]  This

reading accords significance to the structure and plain meaning of the statute, the

pertinent DoL regulation, and legislative history and intent.  Consequently,

defendants violated the FLSA by providing employees with compensatory time for

hours worked over forty in a workweek without an oral or written agreement with

---

[103]    S. Rep. No. 99-159, at 8 (1985) (emphasis added).

[104]    H.R. Rep. No. 99-331, at 20 (1985) (emphasis added).

[105]    It is worth noting that defendants' human resources guide states the
same conclusion.  *See* PC HR Guide § 7.1 n.1.

their Union.  As a result, summary judgment on this issue is granted in favor of

plaintiffs.[106]


### 2.    Straight Time Compensation for Overtime Hours

Plaintiffs and defendants both move for partial summary judgment

regarding whether defendants impermissibly compensated plaintiffs for overtime

at a straight-time rate.  Defendants move for partial summary judgment on this

claim based on the lack of evidence of an actual practice to pay plaintiffs straight

time.  Plaintiffs do not assert the existence of an actual practice but move for

partial summary judgment on behalf of individual plaintiffs who were paid at the

straight time rate.

### a.    Plaintiffs' Motion

Plaintiffs assert that some class members were not adequately

compensated for overtime and move for partial summary judgment on their behalf.

It is undisputed that there were at least six instances where some plaintiffs were

not properly paid at the FLSA mandated time-and-a-half overtime rate for hours

---

[106]    Defendants urge that summary judgment should not be granted to the
plaintiffs because they have already used awarded compensatory time and now
seek a windfall. This argument relates to damages, not liability.

worked over forty.  However, plaintiffs have not demonstrated that inadequate

compensation harmed the plaintiff class as a whole.  The FLSA allows one or

more employees to pursue an action in a representative capacity for "other

employees similarly situated."[107]  As such, the threshold requirement enabling an

FLSA claim to proceed as a collective action is that all of the plaintiffs are

"sufficiently 'similarly situated.'"[108]  The six uncontested instances of insufficient

overtime compensation represent isolated occurrences that are inadequate to

support partial summary judgment on behalf of a class of plaintiffs in a collective

action.[109]  Therefore, plaintiffs' partial summary judgment motion on the issue of

---

[107]     29 U.S.C. § 216(b).

[108]     *Vengurlekar v. Silverline Techs., Ltd.*, 220 F.R.D. 222, 229 (S.D.N.Y. 2003).

[109]     While partial summary judgment cannot be granted to the plaintiffs collectively, such evidence would be sufficient to support claims on behalf of individual plaintiffs.  Defendants deny responsibility on the ground that plaintiffs have not shown the existence of an "actual practice" of failing to pay their employees at the rate of time-and-a-half for hours worked over forty in workweek. In an individual suit, the existence of an actual practice would not be at issue. Defendants further contend that any failure to pay time-and-a-half was an inadvertent and rare occurrence that they should be allowed to rectify under the FLSA window of correction provision. The window of correction, however, is an affirmative defense that may only be used after an employer has first demonstrated an intention to pay employees on a salary basis and applies only to employees who are exempt from the overtime provisions of the FLSA. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 541.118(a)(6). It is undisputed that plaintiffs are not salaried employees; rather they are hourly employees covered by the overtime provisions

31

liability as to those plaintiffs who were paid at straight time when they worked over forty hours a week is denied.

### b.    Defendants' Motion

In turn, defendants contend that the frequency with which plaintiffs were inadequately compensated for overtime is inadequate to constitute an actual policy or practice in violation of the FLSA.  Plaintiffs do not advance the existence of an actual practice or policy of insufficient compensation in their motion for summary judgment on behalf of those plaintiffs who were underpaid. Nonetheless, defendants have not met their burden of establishing on the basis of uncontested facts that there is no policy or practice of undercompensating plaintiffs for overtime.  Plaintiffs' expert found that "in 94.3% of the weeks when plaintiffs worked overtime, they were underpaid in the corresponding pay period."[110]  Therefore, the existence or non-existence of an actual practice of underpayment must be resolved at trial and partial summary judgment for the defendant is denied.

### B.    The Failure to Pay Claim

---

of the FLSA.  The circumstances of defendants' failure to comply with the FLSA time-and-one-half overtime provisions speak only to the question of damages.

[110]    9/8/08 Declaration of Louis R. Lanier, plaintiffs' expert, ¶ 11.

Plaintiffs also move for partial summary judgment on the failure to pay claim. Beyond moving for summary judgment, however, plaintiffs fail to address this issue in their briefs. Moreover, plaintiffs have not offered proof that defendants maintain a policy or practice of failing to compensate plaintiffs for overtime. Plaintiffs' statement of undisputed facts merely contains an oblique reference to a failure to pay, noted in opposition to an unrelated assertion in defendants' statement of undisputed facts.[111] The deposition testimony recounts a single incident where a plaintiff claims not to have been compensated for overtime,[112] and although that plaintiff asserted that her time sheets would substantiate her claim and reveal numerous similar occurrences,[113] no such time sheets were put before the Court. Given the voluminous document discovery that occurred in this case, this unsupported deposition testimony is insufficient to

---

[111] *See* Pl. Am. 56.1 ¶ 53. ("Gordon testified when she complained to her superiors about the DOE's failure to pay her for overtime, she was told they would look into it."). *Cf.* Def. 56.1 ¶ 53 ("Plaintiffs in their depositions conceded that the[y] were told that there was no money to pay them for hours worked over 40 in a work week but that they could receive compensatory time.").

[112] *See* 12/5/07 Deposition of Denise A. Gordon, at 46, Ex. B to 9/8/08 Declaration of Ivan D. Smith, plaintiffs' counsel.

[113] *See id.* at 43.

create a dispute of material fact.  Therefore, the Court grants summary judgment in favor of defendants on the failure to pay claim.[114]

## C.    The Denial of Use Claim

Defendants move for summary judgment on the denial of use claim, but they have not met their burden of showing that there are no genuine issues of material fact.  Several plaintiffs have testified that they were unable to use their accrued compensatory time within a reasonable period after requesting to use it. In response, defendants rely on the use of an expert, whose methodology and conclusions are disputed by plaintiffs, to show that plaintiffs did use their compensatory time.  However, the issue at hand is not only *whether* plaintiffs used their compensatory time, but *when* they were able to do so.

Assessing defendants' and plaintiffs' competing views on whether compensatory time was used in a reasonable time after it was requested or whether it was justifiably denied for reasons of undue disruption  requires credibility determinations that are the province of the jury.  As such, there are issues of fact and defendants' request for summary judgment is denied.

---

[114]     *Cf. NetJets Aviation, Inc. v. LHC Comm'ns, LLC*, 537 F.3d 168, 179 (2d Cir. 2008) (noting that a court may grant summary judgment *sua sponte* in favor of the non-moving party but cautioning that the evidence must then be viewed in the light most favorable to the moving party).

**D.     The Statute of Limitations and Equitable Tolling**

**1.     Equitable Tolling**

Plaintiffs move for a determination, as a matter of law, that the statute of limitations should be equitably tolled as of the date of their initial employment. Plaintiffs assert, and defendants concede, that the defendants failed to post the required FLSA notices in accord with DoL regulations.  However, a failure to post alone does not necessitate equitable tolling.[115]  If plaintiffs knew of the rights outlined on the required notice despite the failure to post, then equitable tolling is unavailable.  Here, defendants provided plaintiffs with the PC HR Guide, which mirrors the relevant content of the official FLSA poster.[116]  Therefore a material

---

[115]     This conclusion is distilled from Second Circuit law in the context of ERISA and the Federal Tort Claims Act.  *See Valdez*, 518 F.3d at 183, 185 (FTCA); *Veltri*, 393 F.3d at 324-26 (ERISA).  Other circuits have directly addressed this issue in the FLSA context.  Notably, the Third Circuit has held that a failure to post alone is sufficient to trigger equitable tolling, *see Bonham v. Dresser Indus.*, 569 F.2d 187, 193 (3d Cir. 1977), while the Eleventh Circuit has ruled that "[t]he failure of the employer to display the poster . . . will not normally toll the two-year statute of limitations . . . ." *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 n.5 (11th Cir. 1984) (citing *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1530-31 (11th Cir. 1983)).

[116]     *Compare* PC HR Guide § 7.3, *with* U.S. Dep't of Labor, *Fair Labor Standards Act (FLSA) Minimum Wage Poster*, *available at* http://www.dol.gov/esa/whd/regs/compliance/posters/flsa.htm.

dispute of fact exists as to whether plaintiffs knew of their right to "[a]t least 1 1/2 times [the] regular rate of pay for all hours worked over 40 in a workweek."[117]

Moreover, the record reveals that disputed issues of material fact exist as to whether defendants were forthright with plaintiffs about their FLSA rights. Plaintiffs allege, and defendants deny, that defendants failed to inform plaintiffs of their overtime protections and – more importantly – intentionally ignored the existence of these rights when questioned. Both parties have offered conflicting testimony to support their position. This Court cannot weigh the respective evidence on a motion for summary judgment. Therefore, equitable tolling cannot be granted as a matter of law.

### 2.    Willfulness

Plaintiffs move for partial summary judgment on the issue of willfulness, but they have not met their burden of proving that uncontested facts support such a finding. A willful violation occurs when an employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. Plaintiffs contend that defendants knowingly violated the FLSA. Plaintiffs have offered no evidence, however, to support their claim of conscious disregard apart from the contested existence of the violations themselves. There is insufficient

---

[117]    *FLSA Minimum Wage Poster, supra.*

uncontested evidence in the record to permit this Court to find, as a matter of law, that defendants acted willfully.  Partial summary judgment for plaintiffs on the issue of willfulness is denied.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for partial summary judgment is granted in part and denied in part, and defendants' motion for summary judgment is denied in full.  The Clerk of the Court is directed to close these motions (Docket Nos. 237, 241).  A conference is scheduled for January 12, 2009 at 5:00 PM.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            December 12, 2008