Docket No. 07 Civ. 0830 (SAS)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA SAUNDERS, et al.,

                                                    Plaintiffs,

        - against -

CITY OF NEW YORK AND THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                                                    Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

***MICHAEL A. CARDOZO***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Diana Goell Voigt*
*Tel: (212) 788-0894*
*Law Manager No. 2007-005255*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT

    POINT I

        THE REQUESTED HOURLY RATES ARE
        UNREASONABLE. ....................................................................... 2

        A.    Legal Standard ..................................................................... 2

        B.    Plaintiffs Fail to Meet Their Burden To Show The
            Requested Rates Are Reasonable ......................................... 2

            (a)    Hourly Rates Do Not Reflect Prevailing
                  Market Rate .......................................................... 3

            (b)    Experience of Counsel Fails to Support Fee
                  Application ............................................................ 4

            (i)    Ivan D. Smith ....................................................... 5

            (ii)    Maureen M. Stampp ............................................. 7

            (iii)    Sabrina M. Tann ................................................... 8

            (iv)    Suzanne Aribakan ................................................. 9

            (v)    Leonard D. Polletta ............................................. 10

            (vi)    Experience of Paralegals Fail to Support Fee
                  Application .......................................................... 11

    POINT II

        PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY
        REDUCED AS EXCESSIVE, DUPLICATIVE,
        UNNECESSARY, VAGUE AND, IN SOME CASES,
        HIGHLY QUESTIONABLE. ......................................................... 12

A.    Discovery, Data Input and Depositions ................................................... 13

B.    Damages................................................................................................... 14

C.    Research and Motion For Summary Judgment....................................... 14

D.    Trial Preparation And Pre-Trial Filings ................................................. 15

E.    Hours Billed After April 9, 2009--Settlement and
Fees Application ...................................................................................... 16

F.    Vague Entries and Block Billing ............................................................ 17

POINT III

PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY
REDUCED DUE TO THEIR LIMITED SUCCESS........................................19

A.    Plaintiffs' Fees Should Be Substantially Reduced
Because Of The Limited Quantity Of The Relief
Obtained. ................................................................................................. 21

B.    Plaintiffs' Fees Should Be Substantially Reduced
Because Of The Limited Quality Of The Relief
Obtained. ................................................................................................. 23

POINT IV

PLAINTIFFS' REQUEST FOR COSTS SHOULD BE
DENIED...........................................................................................................24

A.    Litigation Support from Consultants ...................................................... 24

B.    Copying, Research and Online Search.................................................... 25

CONCLUSION................................................................................................................. 26

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                            **<u>Pages</u>**

<u>601 W. Associates LLC v. Kleiser-Walczak Construction Co.</u>,
    2004 U.S. Dist. LEXIS 8920 (S.D.N.Y. May 18, 2004)..............................................................2

<u>In re AOL Time Warner, Inc. Sec. & "ERISA" Litigation</u>,
    2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ..........................................................7

<u>Abrahamson v. Board of Education</u>,
    374 F.3d 66 (2d Cir. 2004)..............................................................................................23, 24

<u>Albert v. New York City Sch. Constr. Auth.</u>,
    98 Civ. 3628 (E.D.N.Y. 1998) ........................................................................................6, 7

<u>Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany</u>,
    493 F.3d 110 (2d Cir. 2007).................................................................................................2

<u>Arnone v. CA, INC.</u>,
    2009 U.S. Dist. LEXIS 17080 (S.D.N.Y. 2009) ...............................................................22

<u>Arnone v. CA. Inc.</u>,
    No. 08 Civ. 4458, 2009 WL 585831 (S.D.N.Y. Marc. 6, 2009)....................................8, 21

<u>Barfield v. New York City Health and Hospital Co.</u>,
    537 F.3d 132 (2d Cir. 2008)................................................................................19, 23, 24

<u>Corder v. Brown</u>,
    25 F.3d 833 (9th Cir. 1994).................................................................................................22

<u>Davis v. Abercrombie and Fitch Co.</u>,
    08 Civ. 1859 (S.D.N.Y. October 2008)................................................................................5

<u>DeVito v. Hempstead China Shop, Inc.</u>,
    831 F. Supp. 1037 (E.D.N.Y. 1993) ..................................................................................16

<u>Do Yea Kim v. 167 Nail Plaza, Inc.</u>,
    2009 U.S. Dist. LEXIS 1992 (S.D.N.Y. Jan. 9, 2009)......................................................5, 11

<u>Doo Nam Yang v. ACBL Corp.</u>,
    2006 U.S. Dist. LEXIS 6919 (S.D.N.Y. Feb. 22, 2006) .....................................................10

<u>F.H. Krear & Co. v. Nineteen Named Trustees</u>,
    810 F.2d 1250 (2d Cir. 1987)..............................................................................................24

**Cases**                                                                  **Pages**

Farrar v. Hobby,
    506 U.S. 103 (1992)..................................................................................19, 23

Finn v. New York City Off-Track Betting,
    No. 93 Civ. 2825 (S.D.N.Y 1993) ......................................................................7

General Electric Co v. Compagnie Euralair, S.A.,
    1997 WL. 397627 (S.D.N.Y. July 3, 1997) ......................................................15

Green v. Torres,
    361 F.3d 96 (2d Cir. 2004)...............................................................................24

Guo Xing Cao v. Chandara Corp.,
    2001 U.S. Dist. LEXIS 8631 (S.D.N.Y. June 27, 2001)....................................25

Heng Chan v. Sung Yue Tung Corp,
    2007 U.S. Dist. LEXIS 33883, 2007 WL. 1373118 ........................................3, 9

Hensley v. Eckhart,
    461 U.S. 424 (1983)...............................................................................19, 21, 24

Imbeault v. Rick's Cabaret International Inc.,
    2009 U.S. Dist. LEXIS 71562 (S.D.N.Y. Aug. 13, 2009) ....................................4

Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.,
    478 F. Supp. 2d 508 (S.D.N.Y. 2007)...............................................................10

J&J Sports Products v. Alvarez,
    2009 U.S. Dist. LEXIS 89602 (S.D.N.Y. Sept. 10, 2009) ................................11

Kassim v. Schenectady,
    415 F.3d 246 (2d Cir. 2005).........................................................................19, 21

King v. Fox,
    2005 U.S. Dist. LEXIS 28638 (S.D.N.Y. Nov. 18, 2005) ................................13

Lide v. Abbott House,
    2008 U.S. Dist. LEXIS 1382 (S.D.N.Y. Feb. 25, 2008) ...............................13, 23

Lucky Brand Dungarees, Inc., v Ally Apparel Resources, LL,
    2009 U.S. Dist. LEXIS 48498 (S.D.N.Y. May 15, 2009)..................................11

Marano v. Aaboe,
    2007 U.S. Dist. LEXIS 80154 (S.D.N.Y. Oct. 29, 2007) ................................4, 11

**Cases**                                                                                                    **Pages**

Margel v. E.G.L. Gem Laboratories Ltd.,
    2009 U.S. Dist. LEXIS 9357, 2009 WL. 302069 (S.D.N.Y. Feb. 6, 2009)..............................16

McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension,
    450 F.3d 91 (2d Cir. 2006)........................................................................................................3

Mitchell v. Deutsche Morgan Grenfell Inc.,
    No. 98 Civ. 5343 (S.D.N.Y. 1998) ........................................................................................6

Molefi v The Oppenheimer Trust,
    2007 U.S. Dist. LEXIS 10554 (E.D.N.Y. February 15, 2007) ..................................................4

Monaghan v. SZS 33 Assocs., L.P.
    154 F.R.D 78 (S.D.N.Y. 1994) ............................................................................................24

New York State NOW v. Pataki,
    2003 U.S. Dist. LEXIS 7272 (S.D.N.Y. Apr. 28, 2003)..........................................................8

O'Dell et al v. AMF Bowling Ctr. Inc
    09 Civ. 759 (S.D.N.Y. 2009) ................................................................................................6

Patrolmen's Benevolent Association of New York, Inc. v. City of New York,
    2003 U.S. Dist. LEXIS 13472 (S.D.N.Y. July 29, 2003) ......................................................18

Prot. One Alarm Monitoring,
    553 F. Supp. 2d 201 (E.D.N.Y. 2008) ..................................................................................24

Reyes et al. v. Buddha Bar et al,..........................................................................................................6

Riverside v. Rivera,
    477 U.S. 561 (1986)............................................................................................................22

Roberts v. Markey,
    No. 04 Civ. 7671 (S.D.N.Y. 2004) ........................................................................................7

Robinson v. City of New York,
    2009 U.S. Dist. LEXIS 89981 (S.D.N.Y. Sept. 29, 2009)................................................17, 25

Rodriguez v. City of New York
    ..........................................................................................................................................7

Rozell v. Ross-Holst,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008)..................................................................................25

**Cases** <span style="float:right">**Pages**</span>

SAS v. Trintex,
    709 F. Supp. 455 (S.D.N.Y. 1989)............................................................................22

Saunders v. City of New York, et al.,
    594 F. Supp. 2d 346 (S.D.N.Y. Dec. 15, 2008) ...............................................15, 20

Scott v. City of New York, et al.,
    2009 U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009) .........................4, 8, 14, 19

Sewell v. 1199 National Ben. Fun for HHS,
    2007 U.S. Dist. LEXIS 35889 (S.D.N.Y. May 15, 2007).........................................11

Simmonds v. N.Y. City Department of Correctional,
    2008 U.S. Dist. LEXIS 74539 (S.D.N.Y. Sept. 15, 2008) .........................................3

Soler v. G&U, Inc.,
    801 F. Supp. 1056 (S.D.N.Y. 1992)........................................................................17

Suchodolski Associates v. Cardell Finance Corp.,
    2008 U.S. Dist. LEXIS 106912 (S.D.N.Y. December 19, 2008)..............................18

Trotman v. City of New York, HRA,
    No. 07 Civ. 2306 (S.D.N.Y. 2007) ...........................................................................6

Trustees of the Mason Tenders District Council Welfare Fund v. Stevenson Contr. Corp.,
    2008 U.S. Dist. LEXIS 108690 (S.D.N.Y. June 19, 2008)..............................3, 9, 10

Vergara v. Hayden Hotel,
    06 CV 3521 (S.D.N.Y. 2006)....................................................................................7

Verizon Directories Corp. v. AMCAR Transport Corp.,
    2008 U.S. Dist. LEXIS 92037, 2008 WL. 4891244 (S.D.N.Y. Nov. 2008)...............4

Winkler v. Metropolitan Life Insurance Co.,
    2006 U.S. Dist. LEXIS 56464 (S.D.N.Y August 10, 2006) ....................................15

In re Zyprexa Products Liability Litigation,
    2008 U.S. Dist. LEXIS 33090 (E.D.N.Y April 22, 2009) .......................................11

**Statutes**

NY Labor Law Article 6 §§ 190 ...................................................................................6

Rule 54.1 ....................................................................................................................24

## PRELIMINARY STATEMENT

Defendants City of New York and the New York City Department of Education ("defendants") submit this memorandum of law and the accompanying Declaration of Diana Goell Voigt, dated October 20, 2009, in opposition to plaintiffs' motion for attorneys' fees and costs. Plaintiffs seek $2,271,327.50 in attorneys' fees and $162,532.38 in costs for work done by partners and associates from Lewis Brisbois Bisgaard & Smith, LLP ("LBB&S") and by Leonard Polletta, a former Assistant General Counsel for District Council 37, AFSCME, AFL-CIO ("DC 37"). As demonstrated below, the amount requested by plaintiffs is far in excess of a reasonable fee for this matter and should be reduced substantially for the following reasons: (1) the requested hourly rates sought for the respective attorneys and support staff rates are unreasonable; (2) the hours for which compensation are sought are excessive, duplicative, unnecessary, vague, and, in some cases, highly questionable; (3) the fee application fails to account for their limited success; and (4) the requests for costs are insufficiently documented.

## STATEMENT OF FACTS

The Court is respectfully referred to the Declaration of Diana Goell Voigt, sworn to October 20, 2009 and the supporting evidence cited to therein for a statement of pertinent and material facts.[1]

---

[1] Unless otherwise indicated, all references to "Ex." or "Exs." and Declarations are to the Exhibits and Declarations annexed to the Declaration of Diana Goell Voigt ("Goell Voigt Decl."), dated October 20, 2009. Unless otherwise indicated, all references to "Smith Decl." and to "Pls. Memo" are to the Declaration of Ivan D. Smith and Plaintiffs' Memorandum of Law in Support of their Motion for Attorneys' Fees and Costs, both dated September 17, 2009.

# ARGUMENT

## POINT I

## THE REQUESTED HOURLY RATES ARE UNREASONABLE.

### A.    Legal Standard

Determining the "presumptively reasonable fee" generally requires calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 114 (2d Cir. 2007). The Second Circuit left it to the district court to "disciplin[e] the market, stepping into the shoes of the reasonable paying client, who wishes to pay the least amount necessary to litigate the case effectively." <u>Id</u>. Accordingly, in determining a "presumptively reasonable fee," the district courts should "bear in mind all of the case-specific variables identified in <u>Arbor Hill</u> as relevant to what a reasonable paying client would be willing to pay: the complexity and difficulty of the case, the available expertise and capacity of the clients' other counsel (if any), the resources required to prosecute the case effectively, the timing demands on the case, whether the attorney had an interest in achieving the ends of the litigation, and other returns the attorney expected from the representation." <u>Id</u>. at 112. The party seeking fees bears the burden of establishing the reasonableness of the rates sought by producing satisfactory evidence that the requested rate is in line with those prevailing in the community for similar services by lawyers of comparable skill, experience and reputation. <u>601 W. Associates LLC v. Kleiser-Walczak Constr. Co.</u>, 2004 U.S. Dist. LEXIS 8920, at *9 (S.D.N.Y. May 18, 2004).

### B.    Plaintiffs Fail To Meet Their Burden To Show The Requested Rates Are Reasonable

Plaintiffs seek an award of attorneys fees calculated at the following rates: Partner Ivan D. Smith at $600.00/hr; Partner Maureen M. Stampp at $550.00/hr.; Associate

Sabrina M. Tann at $300.00/hr.; Associate Suzanne E. Aribakan at $275.00/hr.; Associate Gregory S. Glickman at $275/hr.; and Leonard D. Polletta at $550.00/hr.

### (a)   Hourly Rates Do Not Reflect Prevailing Market Rate

Although courts have recognized that counsel from large firms may obtain higher compensable rates since they typically charge more per hour to cover higher overhead, the Second Circuit has cautioned that 'overhead is not a valid reason for why certain attorneys should be awarded a higher' rate." <u>Simmonds v. N.Y. City Dep't of Corr.</u>, 2008 U.S. Dist. LEXIS 74539, at *9 (S.D.N.Y. Sept. 15, 2008) (citing <u>McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension</u>, 450 F.3d 91, 97 n.6 (2d Cir. 2006)).  Instead, the reasonable hourly rate should be determined by reference to prevailing rates in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation. <u>Id.</u>  In determining the relevant market, the court "may look to rates charged by those similarly situated," including the rates of firms that are comparably sized. <u>Id.</u>

In light of this inquiry, it is clear that the hourly rates of $600 and $550 sought by Mr. Smith and Ms. Stampp, respectively, far exceed the prevailing current market rates for counsel with similar experience at comparable firms.  For example, this Court has previously held that $425 was a reasonable hourly rate in a Title VII employment law case for a partner at a large law firm who graduated from Yale Law School in 1986. <u>Simmonds v. N.Y. City Dep't of Corrections</u>, 2008 U.S. Dist. LEXIS 74539, at *17;  <u>see also</u> <u>Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Contr. Corp.</u>, 2008 U.S. Dist. LEXIS 108690, at *34 (S.D.N.Y. June 19, 2008) ($325-350 per hour were reasonable hourly rates for a large firm attorney with fifteen years of experience of prosecuting ERISA actions).

Furthermore, in <u>Heng Chan v. Sung Yue Tung Corp</u>, this Court awarded a partner at the law firm of Skadden, Arps, Slate, Meagher & Flom, LLP, with sixteen years of litigation

experience, an hourly rate of $450. 2007 U.S. Dist. LEXIS 33883, at *6 (S.D.N.Y. May 8, 2007). The court acknowledged that the award was "relatively high," but emphasized the "immense resources" needed for the case and more importantly, the fact that it was an "unusually difficult and complex" Fair Labor Standards Act case. Factors such as being "complex and novel" and requiring "large amount of resources, time, and effort" are the exact factors that plaintiffs' counsel stresses in this case to weigh in favor of awarding the full requested hourly rate. However, there is no basis to award Mr. Smith or Ms. Stampp an hourly rate that far surpasses the rate awarded by this Court to counsel with more experience in a complex FLSA case. Scott v. City of New York, 2009 U.S. Dist. LEXIS 78078, at **17 (S.D.N.Y. Aug. 25, 2009) (holding that $425 was a reasonable hourly rate for a partner with *extensive* wage-and-hour experience).

In addition, Leonard Polletta's requested hourly rate similarly exceeds the rate currently awarded to attorneys with similar experience. Imbeault v. Rick's Cabaret Int'l Inc., 2009 U.S. Dist. LEXIS 71562, at *11-10 (S.D.N.Y. Aug. 13, 2009) ($425/hr. slightly exceeded the rates that had been awarded to "seasoned litigators," which tended to fall within the range of $254-381). The high hourly rate requested for Mr. Polletta has only previously been awarded by this Court to experienced attorneys at large law firms. Verizon Directories Corp. v. AMCAR Transp. Corp., 2008 U.S. Dist. LEXIS 92037, 2008 WL 4891244, at *5 (S.D.N.Y. Nov. 2008).

**(b)  Experience of Counsel Fails to Support Fee Application**

The determination of a reasonable hourly rate "requires the submission of information 'concerning the credentials or experience of counsel applying for fees.'" Molefi v The Oppenheimer Trust, 2007 U.S. Dist. LEXIS 10554, at *16 (E.D.N.Y. Feb.15, 2007) (citations omitted). Where such information is lacking, the court may reduce the award of attorneys' fees. See Marano v. Aaboe, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29,

4

2007) (requested hourly rate of $375 denied and $215 awarded as a "reasonable rate" where attorney "does not provide any details regarding her skill, experience or reputation").

Here, plaintiffs have failed to provide any evidence of their experience litigating FLSA collective actions, which would support their requested hourly rate. In fact, plaintiffs purported credentials and the supporting affidavits submitted by former colleagues make no reference to Mr. Smith's or Ms. Stampp's experience litigating FLSA collective actions. See Smith Decl., Exs. "E," "F" and "G." Although Mr. Smith and Ms. Stampp have been litigating for twenty-one and sixteen years respectively, they have little experience litigating FLSA collective actions. The other LBB&S associates assigned to this FLSA action have none.

### (i) Ivan D. Smith

The record, as presented by plaintiffs, does not reflect that Mr. Smith had the requisite wage-and-hour experience to justify a rate of $600/hr.[2] While Mr. Smith's declaration does reveal many years of legal experience, it fails to demonstrate that Mr. Smith had *any* prior experience in FLSA class actions. Do Yea Kim v. 167 Nail Plaza, Inc., 2009 U.S. Dist. LEXIS 1992, at *4 (S.D.N.Y. Jan. 9, 2009) (recommending rates ranging from $150-$200 per hour where "only one of the six attorneys for whom compensation is being awarded... demonstrated any experience in FLSA litigation"). Despite the fact that Mr. Smith's declaration provides a lengthy list of cases to emphasize his experience litigating employment cases, it points only to his expertise in a myriad of discrimination cases. In fact, his declaration only cites two FLSA

---

[2] Indeed, Anne Vladeck's declaration emphasizes Vladeck's successful representation in employment discrimination cases, not the success she has had as a result of working with Mr. Smith or Ms. Stampp. She concedes that she has never actually worked on a case with them, only discussed cases as colleagues. See Smith Decl., Ex. "E" at ¶¶3 and 8. Moreover, Ms. Vladeck cites to only one FLSA case, Davis v. Abercrombie and Fitch Co., 08 Civ. 1859 (S.D.N.Y. October 2008), which was filed a year after Mr. Smith and Ms. Stampp left the firm.

class actions and neither establishes that Mr. Smith had any FLSA experience to support the requested rate.

First, Mr. Smith's declaration cites to <u>O'Dell et al v. AMF Bowling Ctr. Inc.</u>, 09 Civ. 759 (S.D.N.Y. 2009), as evidence of his prior experience and skill to justify his hourly rate. <u>See</u> Smith Decl., ¶¶ 63. That case however, was filed in January 2009, more than fifteen months after Mr. Smith had already performed the majority of hours on this case.[3] As such, Mr. Smith cannot rely on that case to support his contention that he either has experience litigating FLSA cases, or that the <u>O'Dell</u> case provided Mr. Smith with any experience or skill for this FLSA class action to warrant his requested rate of $600/hr., a rate that far exceeds the current market rate. Moreover, <u>O'Dell et al.</u> did not even involve any FLSA claims.[4]

Mr. Smith's declaration also cites to <u>Reyes et al. v. Buddha Bar et al.</u> <u>See</u> Smith Decl., ¶ 63. Although that case was handled by Mr. Smith's firm and did in fact involve FLSA violations, the docket reveals that Mr. Smith did not personally handle any aspect of that litigation.[5] <u>See</u> Goell Voigt Decl., ¶10, Ex. "2." Furthermore, despite the fact that Mr. Smith's declaration asserts that he has "extensive" class action experience, the record indicates otherwise. <u>See</u> Smith Decl., ¶ 63. In the cases cited however, Mr. Smith merely represented two, three, and at most, five plaintiffs.[6] Thus, it is clear based on the record that Mr. Smith does not, in fact,

---

[3] By January 2009, the month in which the <u>O'Dell</u> complaint was filed, the Court had already decided the parties' summary judgment motions and the parties had begun to prepare for trial. <u>See</u> Goell Voigt Decl., ¶9, Ex. "1."

[4] A review of the complaint filed in <u>O'Dell et al v. AMF Bowling Ctr. Inc.</u> confirmed that there were only claims for violations of the New York Labor Law, Article 6 §§ 190. <u>Id.</u>

[5] The docket sheet stated that defendants in <u>Reyes</u> case were represented by Peter J. Biging from the San Diego office of LBB&S. Mr. Biging now appears to be in the New York office. But the docket sheet does not have Ivan Smith listed as counsel, nor did he file a Notice of Appearance.

[6] <u>Trotman v. City of New York, HRA</u>, No. 07 Civ. 2306 (S.D.N.Y. 2007) (3 plaintiffs); <u>Roberts v. Markey</u>, No. 04 Civ. 7671 (S.D.N.Y. 2004) (2 plaintiffs); <u>Mitchell v. Deutsche Morgan Grenfell Inc.</u>, No. 98 Civ. 5343 (S.D.N.Y. 1998) (2 plaintiffs); <u>Albert v. New York City Sch.</u>

have extensive class action experience or skill to warrant the requested award in this action of more than 200 plaintiffs.[7]

Although defendants raised an issue of first impression for the Court to decide, this FLSA action was not as complex as other FLSA cases litigated before this Court. Moreover, plaintiffs' counsels, as it turns out, did not have the prior high level of skill or experience that was transferrable to this type of action. Consequently, Mr. Smith's lack of experience in FLSA litigation calls for a reduction of at least 50% of the requested hourly rate.

### (ii) Maureen M. Stampp

The record as submitted by plaintiffs' counsel further fails to demonstrate that Ms. Stampp had any prior experience with FLSA class actions to warrant her requested hourly rate. The Smith declaration indicates that Ms. Stampp has only handled one FLSA action in her sixteen years practicing law.[8] See Smith Decl., ¶ 65. Furthermore, unlike this case with more than 200 plaintiffs, Ms. Stampp represented only three plaintiffs in that FLSA action. In fact, it appears that Ms. Stampp's experience litigating the Vergara action was limited, as it was settled within one year of filing. See Goell Voigt Decl., ¶11, Ex. "3."

Although the LBB&S website provides a biography on Ms. Stampp to highlight her extensive litigation experience, it further fails to show that she had any previous background representing clients in FLSA matters.[9] Furthermore, an online newsletter for NYU Stern alumni

---

Constr. Auth., 98 Civ. 3628 (E.D.N.Y. 1998) (5 plaintiffs); Finn v. New York City Off-Track Betting, No. 93 Civ. 2825 (S.D.N.Y 1993) (2 plaintiffs).

[7] Although Ivan Smith's declaration cites to a few class action litigations, besides Rodriguez v. City of New York, a FMLA class action, none of those cases could be identified with the citation provided by plaintiffs' counsel, which appears to be incorrect.

[8] Vergara v. Hayden Hotel, 06 CV 3521 (S.D.N.Y. 2006).

[9] "Ms. Stampp's extensive court litigation experience includes representing clients in employment discrimination, WARN Act, ERISA, and employment contract matters in federal and state courts ... arbitrating disciplinary, contract interpretation, and employment cases before the AAA and the NASD." See http://www.lbbslaw.com/attorneybio.aspx?id=2696

indicates that during her tenure as partner at the Vladeck firm, Ms. Stampp specialized in discrimination and harassment cases.[10] This Court held recently in <u>Scott v. City of New York</u> that $425 was a reasonable hourly rate for a partner with extensive wage-and-hour experience and considerable experience in the FLSA field. 2009 U.S. Dist. LEXIS 78078; <u>see also</u> <u>Arnone v. CA. Inc.</u>, No. 08 Civ. 4458, 2009 WL 585831, at *3 (S.D.N.Y. Mar. 6, 2009) (holding that $425 per hour is a typical rate for a labor lawyer with substantial experience with ERISA). Thus, there is no basis to award Mr. Smith or Ms. Stampp an hourly rate that far exceeds the rate awarded to counsel with specialized experience, especially where the record fails to demonstrate that they had any significant prior experience in handling FLSA matters.

### (iii) Sabrina M. Tann

The record also fails to demonstrate that associate Sabrina Tann had the credentials, skills, or experience in employment law to support an hourly rate of $300. Ms. Tann joined Lewis Brisbois' Labor and Employment division in April 2008 and had never worked in the area of employment law prior to joining the firm and immediately being assigned to this case. Ms. Tann previously worked at the New York City Law Department as Assistant Corporation Counsel in the Special Federal Litigation Division, where she was responsible for defending actions alleging police misconduct brought pursuant to 42 U.S.C. Section 1983. Prior to her experience at the Law Department, Ms. Tann worked at the law firm of Morgan Lewis and Bockius LLP, where she focused on securities litigation.

Ms. Tann's lack of experience and skills in employment law and, more specifically, with the FLSA calls for a reduction in the requested hourly rate. Ms. Tann's experience is similar to the associates in <u>New York State NOW v. Pataki</u>, where this Court reduced an associate's hourly rate from $175 to $150 per hour. There, the Court emphasized that

---

[10] See http://w4.stern.nyu.edu/alumni/enewsletter/vol3/Issue1/09.html.

8

the hourly rate was excessive because the attorney was merely a first-year associate and had "not demonstrated experience in the area of civil rights or labor and employment law." 2003 U.S. Dist. LEXIS 7272, at *11-10 (S.D.N.Y. Apr. 28, 2003). Ms. Tann joined LBB&S in April 2008 and expended the majority of her hours on this case during her first year practicing in the substantive area of labor and employment law.[11] Furthermore, Ms. Tann's hourly rate of $300 has previously been awarded by this Court to counsel with multiple years of experience in the specific area of the law. Heng Chan v. Sung Yue Tung Corp, 2007 U.S. Dist. LEXIS 33883, 2007 WL 1373118, at *4. Thus, there is no basis to justify the same $300/hr. for an associate who has not demonstrated any employment, let alone FLSA, experience.

### (iv) Suzanne Aribakan

The record fails to establish that associate Suzanne Aribakan had the requisite credentials, skills, or experience in employment law to justify an hourly rate of $275. Besides a statement that Ms. Aribakan graduated from Hunter College in 1998 and received her J.D. from New York Law School in 2005, plaintiffs' counsel has not submitted any evidence regarding Ms. Aribakan's prior experience or qualifications. In such a situation, the court has the discretion to deny fees all together. Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Contr. Corp., 2008 U.S. Dist. LEXIS 108690, at *34 (S.D.N.Y. June 19, 2008).

Ms. Aribakan's biography on Lewis Brisbois' website further fails to demonstrate that she had *any* prior experience in employment law, let alone FLSA litigation.[12] In fact, the firm's website illustrates that Ms. Aribakan practices in the firm's Insurance Coverage and Bad Faith division, not in its Labor and Employment Law division, and that her prior experience is in corporate transactions and security fraud. Ms. Aribakan's two to three years practicing in the

---

[11] http://www.lbbslaw.com/attorneybio.aspx?id=3332
[12] http://www.lbbslaw.com/attorneybio.aspx?id=2044

firm's Insurance Coverage and Bad Faith division is simply not equivalent to FLSA litigation experience to justify an hourly rate of $275. Furthermore, a rate of $275 has not even been awarded to junior attorneys with actual experience in the specific area of the law. Doo Nam Yang v. ACBL Corp., 2006 U.S. Dist. LEXIS 6919, at *7-8 (S.D.N.Y. Feb. 22, 2006) ($175 per hour was a reasonable rate for an attorney in FLSA case with less than two years experience).[13]

### (v)  Leonard D. Polletta

The record fails to demonstrate that Leonard Polletta, a former Assistant General Counsel with DC 37, had the requisite credentials, skills, or experience in FLSA to support an hourly rate of $550. Mr. Polletta's declaration merely establishes he represented Union members in a number of cases. However, as with Mr. Smith and Ms. Stampp, not one of the cases provided indicates that Mr. Polletta handled any FLSA matters during his tenure there, let alone had any significant federal litigation experience. Moreover, prior to his tenure at DC 37, Mr. Polletta worked as an associate counsel for the United Electrical, Radio, and Machine Workers of America, representing the national union before the National Labor Relations Board. That experience similarly fails to show that Mr. Polletta had any experience or skills in handling FLSA class actions prior to this case. The Court should, therefore, reduce the requested fee as a result of plaintiffs' counsel's failure to demonstrate Mr. Polletta's requisite credentials or

---

[13]   The requested hourly rate of $275 for associate Gregory Glickman is similarly unreasonable. Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A., 478 F. Supp. 2d 508, 510 (S.D.N.Y. 2007) ($225 per hour for attorney with four years experience was reasonable). Moreover, the fact that the record fails to establish that Mr. Glickman had any prior FLSA experience further calls for a reduction in the requested hourly rate. Trs. of the Mason Tenders Dist. Council Welfare Fund v. Stevenson Contr. Corp., 2008 U.S. Dist. LEXIS 108690.

experience in handling complex FLSA matters. See Marano v. Aaboe, 2007 U.S. Dist. LEXIS 80154, at *9 (S.D.N.Y. Oct. 29, 2007).[14]

### (vi) Experience of Paralegals Fail to Support Fee Application

Plaintiffs' seek an hourly rate of $125 for paralegals Olusegun Oguntola, Blanca N. Pena, Naomi Sasabe, Giovanni A. Gargano, and associate Suzanne Aribakan.[15] The rate sought by plaintiffs for paralegals, however, is at the high end of rates awarded in this district. See Sewell v. 1199 Nat'l Ben. Fun for HHS, 2007 U.S. Dist. LEXIS 35889 (S.D.N.Y. May 15, 2007) (awarding $90 an hour for paralegal services). In fact, prior courts have awarded an even lower rate where the record fails to provide information regarding the relative experience of the staff. See Do Yea Kim v. 167 Nail Plaza, Inc., 2009 U.S. Dist. LEXIS 1992 (S.D.N.Y. Jan. 9, 2009); Lucky Brand Dungarees, Inc., v Ally Apparel Resources, LL, 2009 U.S. Dist. LEXIS 48498, at *4 (S.D.N.Y. May 15, 2009) (noting "to the extent that clerical work may be charged to the client, in seeking reimbursement parties are generally limited to no more than $50.00 per hour of work"). Plaintiffs have failed to identify any prior employment or experience of the paralegals for which they seek an award. See generally Smith Decl..

Furthermore, the record specifically indicates that Ms. Aribakan alone spent over 1000 hours manually entering data from time cards into a live electronic database. Other paralegals apparently expended another 561 hours inputting time cards into an electronic database. In re Zyprexa Products Liability Litigation, 2008 U.S. Dist. LEXIS 33090, at *102

---

[14] Mr. Polletta failed to submit copies of his "contemporaneous handwritten records." Instead, he submitted a typed summary. A lack of contemporaneous time records or copies, however, is fatally deficient, as there is no proof that the summary submitted was actually reconstructed from contemporaneously maintained records. J&J Sports Prods. v. Alvarez, 2009 U.S. Dist. LEXIS 89602, *16 (S.D.N.Y. Sept. 10, 2009).

[15] With respect to Ms. Aribakan, plaintiffs' counsel seeks a rate of $125 for 911.88 hours, which is categorized as paralegal work. See Smith Decl., ¶84, fn. 5. This rate is clearly unreasonable as the work done by Ms. Aribakan appears to be clerical. See Smith Decl., Ex. "H," pp. 54-62.

(E.D.N.Y Ap. 22, 2009), the Court held that data entry was "more akin to clerical or even secretarial tasks." Thus, the hourly rate of $125 is not reasonable, especially in light of the fact that Ms. Aribakan and other paralegal staff dedicated excessive hours to inputting data, which does not appear to have been relied upon by plaintiffs' expert.[16] Defendants therefore submit that the fee application for all non-attorney staff (and the clerical work done by Ms. Aribakan) should be denied in its entirety or, in the alternative, all should be awarded a rate of no more than $50/hr.

## POINT II

### PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY REDUCED AS EXCESSIVE, DUPLICATIVE, UNNECESSARY, VAGUE AND, IN SOME CASES, HIGHLY QUESTIONABLE.

Plaintiff submits contemporaneous time records for 6752.82 hours allegedly spent in litigating this case. Plaintiffs argue that they have already reduced the bill by 839.88 hours (or 13.2%) to 5912.82 hours and therefore no further reduction in fees is necessary. See Smith Decl., ¶82. However, a review of the entries in the time records submitted by plaintiffs' counsel shows duplication of effort by many attorneys and paralegals, as well as excessive amounts of time spent on uncomplicated and unnecessary tasks.

---

[16] The Supplemental Declaration of Louis Lanier, Ph.D., plaintiffs' expert, dated March 16, 2009, relied upon a database of the paper time cards for 38 plaintiffs. The two other reports created by plaintiffs' expert relied upon electronic data produced by defendants. Prior to the March 16, 2009 Supplemental Report, plaintiffs had never relied upon the paper time card data in any of their submissions. Thus, if Ms. Aribakan inputted data for all 208 plaintiffs, it appears that there was some type of "cherry picking" of the data, as plaintiffs' expert stated that he only conducted a "study of time worked by 38 plaintiffs in the new time card data…" See Goell Voigt Decl., ¶19, Ex. "5," ¶7. Indeed, we have reviewed the database produced by plaintiffs and the data only pertains to 38 plaintiffs.

## A.    Discovery, Data Input And Depositions

Plaintiffs' counsel spent 2488.15 hours on conducting discovery in this collective action between September 2007 through the beginning of May 2008, including 464 hours on depositions , and 1506.15 hours reviewing and inputting information from payroll records.[17]  See Goell Voigt Decl., ¶¶15-16, Ex. "4;" Smith Decl., ¶84, Ex. "H," pp.54-72  Thus, over nine months, LBB&S averaged 276 hours a month on matters pertaining to discovery.  Such hours are excessive and should be reduced.  Lide v. Abbott House, 2008 U.S. Dist. LEXIS 1382, at *4 (S.D.N.Y. Feb. 25, 2008) (a reduction of attorney's fees is warranted where counsel has included excessive or unnecessary hours on straightforward tasks).[18]

Evidence of the excessive LBB&S billing to this case can be seen in the amount of time spent on depositions.  In total sixteen depositions were taken—eight by each party.  None of the depositions lasted a whole day.  See Goell Voigt Decl., ¶¶16-17.  However, Mr. Smith billed almost 272 hours in preparing for and attending these depositions, and Ms. Stampp billed another 178 hours.  In total, including 14 hours Ms. Tann billed, plaintiffs' counsel spent 464 hours on depositions.  Thus, the firm spent an average of 29 hours on each deposition. See Goell Voigt Decl., ¶16, Ex. "4."  Such an amount is excessive and should not be allowed.  See King v. Fox, 2005 U.S. Dist. LEXIS 28638, at *29 (S.D.N.Y. Nov. 18, 2005).

---

[17]  Based upon the vague entries concerning the document review and inputting project undertaken by certain associates and paralegal staff, there is no way to determine if the hours spent were reasonable.  See Smith Decl., Ex. "H," pp. 54-72.

[18]  An example of unnecessary or excessive billing:  from January 14, 2008 through January 17, 2008, Ms. Stampp spent 16.50 hours preparing a letter to the Court seeking an extension of discovery.  When the Court denied the extension request, defendants' counsel wrote a letter seeking reconsideration, which was granted by the Court.  Ms. Stampp billed another 9 hours from February 4, 2008 through February 6, 2008 reviewing the letter prepared by defendants' counsel.  See Smith Decl., Ex. "H," p. 13.

## B. Damages

In reviewing the time records, it appears that plaintiffs' counsel spent an exorbitant amount of time--272 hours--on "damages calculations." <u>See</u> Goell Voigt Decl., ¶18, Ex. "5." However, plaintiffs hired an expert to calculate damages in this action and are also seeking $107,498.37 for "Expert/Consultant Fees" associated with reviewing electronic data and calculating plaintiffs' damages. <u>See</u> Smith Decl., ¶87. The extraordinary number of hours spent by LBB&S, in addition to their expert, emphasizes the limited experience and skill counsel had in determining damages and the duplicative nature of the work done. Thus, the Court should significantly reduce the amount of hours sought for "damages calculations."[19]

## C.    Research And Motion For Summary Judgment

LBB&S expended an extraordinary amount of time researching and briefing the motions for summary judgment. <u>See</u> Goell Voigt Decl., ¶ 18. Without even including hours spent exclusively on research, the total of approximately 928 hours -- the equivalent of more than twenty-three forty-hour weeks -- to research and brief a motion and opposition to a motion for summary judgment is not reasonable.[20] Despite the expenditure of this astonishing amount of time, plaintiffs only prevailed on one claim, as the Court determined that there were issues of fact or an outright failure by plaintiffs to support the granting of summary judgment.[21] [22]

---

[19] Further underscoring the unnecessary work that was done in this case, a review of the contemporaneous time records confirms that Ivan Smith spent 68.50 hours or $41,100 on "damages calculations" after the motions for summary judgment were fully briefed and continued billing using this vague entry until the date of the Court's decision on December 12, 2008. As of October 4, 2008, plaintiffs' expert had submitted three expert reports on damages and numerous declarations in support of plaintiffs' motion for summary judgment. Because of the vagueness of the entry, it is unclear exactly what Mr. Smith was doing. However, based upon the timing, one has to question the necessity for such time spent by the senior partner.

[20] This amount does not include another 555.20 hours spent researching the law concerning the claims asserted in this FLSA collective action. <u>See</u> Goell Voigt Decl., ¶2, Ex. "7."

[21] In <u>Scott v. City of New York, et al.</u>, a far more complex and novel FLSA collective action involving 15,000 plaintiffs, the attorneys sought fees for 737 hours for time allegedly spent on

Plaintiffs moved for summary judgment on their failure to pay claims. This Court determined that plaintiffs failed to address this issue in their briefs and had not offered proof that defendants maintain a policy or practice of failing to compensate plaintiffs for overtime. Saunders v. City of New York, et al., 594 F. Supp. 2d 346, 363-364 (S.D.N.Y. Dec. 15, 2008). Based upon the lack of evidence and argument submitted by plaintiffs, the Court *sua sponte* granted summary judgment in favor of defendants on the failure to pay claims. As such, plaintiffs certainly should not be awarded for all of the hours purportedly spent in drafting this motion. In fact, a substantial reduction of at least 60% is warranted. See Winkler v. Metro. Life Ins. Co., 2006 U.S. Dist. LEXIS 56464 *8 (S.D.N.Y August 10, 2006); General Elec. Co v. Compagnie Euralair, S.A., 1997 WL 397627 *6 (S.D.N.Y. July 3, 1997).

## D.    Trial Preparation And Pre-Trial Filings

On January 12, 2009, the Court set a trial date of May 11, 2009 to try the remaining claims in this collective action. From January 12, 2009 through April 9, 2009, the day that the parties reached a settlement in principle, attorneys for LBB&S spent approximately 1078 hours preparing for trial. See Goell Voigt Decl., Ex. "8." Thus, over 12 ½ weeks, LBB&S spent an average of 86 hours a week preparing for trial. Not only are these hours excessive but they were clearly duplicative and unnecessary. For example, of those hours, 568.40 hours were spent

---

drafting and opposing motions for summary judgment. Here, plaintiffs seek almost 200 hours more for work on a motion that was certainly less complex.

[22] Plaintiffs are also seeking an award for time spent on "affidavits," which they claim they were forced to obtain because of the defenses raised by defendants. See Smith Decl., ¶¶18-28. Plaintiffs contend that they prepared 24 affidavits because of "undisclosed evidence." However, plaintiffs' attempt to justify excessive work done to address legitimate defenses raised by defendants, which at that point, had not been considered by the Supreme Court or the Second Circuit, is unconvincing. The fact that plaintiffs' counsel then spent 178.50 hours on opposing this defense further illustrates the excessive work done by LBB&S attorneys. In fact, plaintiffs submitted only three affidavits with plaintiffs' summary judgment papers. However, they spent approximately 178 hours preparing these affidavits, or almost 7.5 hours on each affidavit they claim to have prepared. See Goell Voigt Decl., ¶22, Ex. "7."

by four attorneys on the Joint Pre-trial Order and reviewing documents to be submitted as exhibits at trial. Id.[23] These expenditures of time are not reasonable and should be reduced by at least 50%.

In addition, the time records concerning trial preparation are rife with entries lacking a description sufficient to determine whether the time expended was reasonable. For example, Suzanne Aribakan spent approximately 170 hours from February 19, 2009 through April 5, 2009 determining plaintiffs' exhibits, even after spending over 1,000 hours reviewing documents produced in this action. Moreover, both Ivan Smith and Maureen Stampp provided minimal description for the time spent on preparing for trial (e.g., "Pre-trial work," "Trial Prep" and "Preparing for Trial"). Such entries are meaningless. Due to the vagueness of the entries, an across the board reduction of the hours is warranted. See Margel v. E.G.L. Gem Lab Ltd., 2009 U.S. Dist. LEXIS 9357, 2009 WL 302069, at *6 (S.D.N.Y. Feb. 6, 2009); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993).

## E.  Hours Billed After April 9, 2009--Settlement And Fees Application

The parties settled in principle on April 9, 2009. See Goell Voigt Decl., ¶6, Ex. "1." A review of the contemporaneous time records from April 10, 2009 through September 16, 2009 confirms that LBB&S attorneys billed another 1066.30 hours or $435,917.50 on negotiating the settlement agreement and then implementing the settlement and drafting their fee application. See Goell Voigt Decl., Exs. "11" and "12." Implementing the terms of the settlement agreement merely required plaintiffs' counsel to determine, based upon an agreed upon formula, the amount of back pay, compensatory time and liquidated damages each plaintiff should receive. See Goell Voigt Decl., Ex. "10;" and Smith Decl., Ex. "D."

---

[23] In addition, from 2/11/09 to 3/30/09, Sabrina Tann alone spent 106 hours drafting the Jury Charges and Voir Dire. See Smith Decl., Ex. "H," p.24-25; see also Goell Voigt Decl., Ex. "8."

As with other entries discussed above, this amount is unreasonable considering the terms of the settlement. Indeed, plaintiffs' counsel claims that they spent 126.90 hours reviewing a settlement agreement, which was drafted by defendants' counsel. See Goell Voigt Decl., Ex. "13." It is hard to imagine, considering the terms of the settlement, what issue required four attorneys to spend almost 127 hours to comment on and finalize a settlement agreement. See Smith Decl., Ex. "D." With respect to the fee application, it appears that four attorneys were required to draft the motion for a total amount of 275.8 hours. Such an amount is clearly excessive and unreasonable as a matter of law. See Robinson v. City of New York, 2009 U.S. Dist. LEXIS 89981, at *43-44 (S.D.N.Y. Sept. 29, 2009) (holding that 345 hours spent for preparation of the fee application was by "clearly excessive" and reducing the hours by 40%). As such, the Court should reduce any award by 50% for the unnecessary, duplicative and questionable hours spent on the finalizing the settlement agreement, implementing the settlement and the fee application. In re AOL Time Warner, Inc. Sec. & "ERISA" Litig., 2006 U.S. Dist. LEXIS 78101, at n.18 (S.D.N.Y. Sept. 28, 2006) (court reduced the fee award for "excessive and unnecessary services" after the settlement).

**F.     Vague Entries And Block Billing**

Defendants have identified several inaccuracies in plaintiffs' records, which raises the question whether plaintiffs' records are indeed reliable. For instance, on March 5, 2008, Ms. Stampp claims to have attended a deposition for 9.30 hours. Mr. Smith billed 2.20 hours on February 1, 2008 for "Preparing for deposition and attending depositions." However, there were no depositions taken on either of these dates. See Goell Voigt Decl., ¶17. On April 10, 2009, the day after the parties signed a three-page letter agreement concerning terms for settlement, Ms. Stampp billed 5.00 for "Reviewing the Settlement Agreement." However, the Settlement Agreement was not sent to plaintiffs' counsel until May 1, 2009. Id., ¶7. In fact, such glaring

errors combined with the voluminous list of vague entries, the impermissible block billing, and the excessive, duplicative entries make the record in support of plaintiffs' application unreliable.

Defendants have also compiled a list of block billing or "commingling of activities within one time entry [which] impedes the court's efforts to evaluate the reasonableness of any of the listed activities." Soler v. G&U, Inc., 801 F.Supp. 1056, 1061-62 (S.D.N.Y. 1992). There is an exhaustive list of impermissibly vague entries or block billing, totaling 3941.30 hours. See Goell Voigt Decl., ¶30, Exs. "14" and "15." Examples include, 7 hours for Ivan Smith on 10/2/08 "drafting and editing affidavit, conference call with judge clerk, and expert;" on 2/3/09, 4.20 hours for "trial prep, reviewing Scheindlin's decision in Scott and review jury instructions. Reviewing Documents for Exhibits;" and on 3/18/09, 8 hours for "Editing pre-trial order, jury instructions and preparing for trial. Drafting response to defendants' motion in limine." For Maureen Stampp, on 7/14/08, she apparently spent 8 hours for "Revised plaintiffs' affidavits; Investigated Member's claim (Jennifer Greenblatt) for Inclusion in Class of Plaintiffs; Reviewed Damages Calculations;" and on 8/21/08, she spent 11 hours for "Worked on Plaintiffs' Summary Judgment Motion. Meeting with Plaintiffs to Update on Status of Case." The commingling of tasks makes it impossible to determine the amount of hours plaintiffs legitimately devoted to their successful claims, while excluding the time plaintiffs performed work on their unsuccessful claims.

In evaluating fee applications, courts have made substantial reductions in the number of hours for which attorneys seek compensation based on the vagueness of the entries and/or block billing in the attorneys' records. See Suchodolski Assocs. v. Cardell Fin. Corp., 2008 U.S. Dist. LEXIS 106912 T *7-8 (S.D.N.Y. December 19, 2008) (reducing the total hours billed by forty-five percent – thirty percent for vagueness and fifteen percent for block billing).

Accordingly, a substantial reduction of plaintiffs' counsels' claimed hours is warranted here as a result of the vague/block billing entries in plaintiffs' billing records. Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York, 2003 U.S. Dist. LEXIS 13472, at *7 (S.D.N.Y. July 29, 2003). Based upon a careful and thorough analysis of the contemporaneous time records submitted by LBB&S, it is clear that a significant reduction of at least 50% is not only warranted by mandated by the law.

## POINT III

### PLAINTIFFS' FEES SHOULD BE SUBSTANTIALLY REDUCED DUE TO THEIR LIMITED SUCCESS.

The Supreme Court has held that the degree of success is "the most critical factor in determining the reasonableness of the fee award." Kassim v. Schenectady, 415 F.3d 246, 254 (2d Cir. 2005) (quoting Farrar v. Hobby, 506 U.S. 103, 114 (1992)). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley v. Eckhart, 461 U.S. 424, 440 (1983). Both the "quantity and quality of relief obtained as compared to what the plaintiff sought are key factors" in determining success. Barfield v. New York City Health and Hospital Co., 537 F.3d 132, 152 (2d Cir. 2008); Scott v. City of New York, et al., U.S. Dist. LEXIS 78078 (S.D.N.Y. Aug. 25, 2009).

While a prevailing plaintiff is entitled to some reasonable fees, the meaning of prevailing has been given a "generous formulation that brings the plaintiff only across the statutory threshold." Hensley, 461 U.S. at 433. The district court remains obligated to determine what fees are reasonable in light of the circumstances of the case. Id. If the plaintiff has only achieved limited success, the unadjusted lodestar figure may result in an excessive fee award. Hensley, 461 U.S. at 436. Plaintiff argues that they have achieved "substantial" or "complete" success and that the settlement reached between the parties is valued in excess of one

million dollars. Therefore, plaintiffs contend that they are entitled to an award of the full amount of legal fees and costs sought. See Pls. Memo at 6, 12-15. Plaintiffs have mischaracterized the quantity and quality of their success.

In the Court's December 12, 2008 Opinion and Order on the parties' motions for summary judgment, the Court held: first, with respect to the claims concerning the "failure to provide compensatory time" and the "failure to pay claim," the Court granted *sua sponte* summary judgment to defendants; second, the Court denied plaintiffs' motion as to the claim that defendants paid straight time for hours worked over 40 in a work week -- the "underpayment OT claim"; third, on the issue of liability for the claim that the payment of compensatory time in this instance violated the FLSA, the "failure-to-pay cash O/T claim," the Court granted summary judgment to plaintiffs;[24] and fourth, with respect to the "denial of use" claim, the Court determined that there were disputed issues of fact and denied defendants' motion. See Saunders, 594 F. Supp. 2d at 361. After further briefing by the parties, the Court dismissed the denial of use claim on March 25, 2009. Therefore, the only remaining issues left to be tried were (1) the failure to pay overtime at a rate of one and one half for hours worked over 40 in a work week and whether or not there was an actual practice of underpayment.[25] Thus, out of five claims brought in this collective action, three were dismissed and one claim was withdrawn.[26]

---

[24] Although the Court granted plaintiffs liability on this claim, the calculation of damages remained a factual dispute to be tried by a jury.

[25] Additionally, the issue of willfulness as it concerns the "failure to pay cash O/T claim" remained a jury issue. With respect to plaintiffs' motion for a determination that the statute of limitations should be equitably tolled, the Court determined that there were disputed issues of material fact and therefore equitable tolling could not be granted as matter of law.

[26] Plaintiffs argue that if they had lost this claim, then the entire complaint would have been "eviscerated" and subject to summary dismissal and therefore any result achieved through settlement cannot be deemed limited. See Plaintiffs' Memo at 12. However, it is clear that the denial of use claim, the conversion claim and the failure to pay claim are wholly separate from whether or not the payment of compensatory time for hours worked over 40 violated the FLSA.

Plaintiffs concede that the Courts can reduce the attorneys' fees award for limited success. See Plaintiffs' Memo at 12. However, to support the argument that their limited recovery should not reduce their fees, plaintiffs argue that the jury award in Scott is different from the settlement reached by the parties in this collective action. Plaintiffs rely on one case -- decided before this Circuit's clear direction that "a district court, in fixing fees, should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Kassim 415 F.3d at 253 (quoting Hensley, 461 U.S. at 435).

## A.      Plaintiffs' Fees Should Be Substantially Reduced Because Of The Limited Quantity Of The Relief Obtained.

"Where recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." Kassim, 415 F.3d at 254. Awarding fees for hours spent on a suit with only limited success unreasonably rewards an attorney with fees that are excessive in relation to the results obtained. Hensley, 461 U.S. at 440. A reduction in attorneys' fees based on the partial success of the plaintiff's relief in proportion to the amount sought is appropriate. See e.g. Arnone v. CA, INC., 2009 U.S. Dist LEXIS 17080 at * 11 (S.D.N.Y. 2009) (reducing the lodestar calculation based on defendant's successful defense of multiple claims).

The disparity between the damages agreed upon between the parties and the amount sought justifies a substantial reduction in fees. Plaintiffs' expert report indicates that they expected to receive over $1 million in damages from defendants, excluding liquidated damages or interest. See Goell Voigt Decl., Ex. "5." However, DOE agreed to pay and plaintiff accepted $357,000 ($200,000 in back pay and 6618 hours of compensatory time)—almost a third

---

Indeed, if they had not prevailed on the "failure to pay cash O/T" claim, then denial of use claim would not have been dismissed by the Court.

of the amount sought.[27]  Furthermore, defendants prevailed on two out of five of plaintiffs' claims and plaintiffs withdrew one claim.  While plaintiffs prevailed on their claim that the payment of compensatory time for hours worked over 40 in a work week violated the FLSA, plaintiffs agreed to take much less than they sought.

A review of the distribution chart provided by plaintiffs establishes the following: depending upon years of service, (1) each plaintiff, who is still employed by DOE, will receive 53.22 hours in compensatory time; (2) the payment of back wages varies from zero or as little as approximately $0.67 to $13,154.21 (one plaintiff); and (3) the payment of liquidated damages provides for a payment of $10,000 to each named plaintiff (13), which leaves $320,000 to be divided between 195 plaintiffs and results in payments as little as $579.58, with most plaintiffs getting $1,974.07, and highest payment around $2,779.48.[28]  See Goell Voigt Decl, ¶26, Ex."10."

Plaintiffs now seek almost $2.5 million for attorneys' fees and costs when some plaintiffs have been awarded as little as $574.96 and the most $18,050.66.  Therefore, an additional sizeable reduction in attorneys' fees is entirely reasonable and appropriate.  See Corder v. Brown, 25 F.3d 833, 836-37 (9th Cir. 1994) (holding that attorney's fees must be reduced where "plaintiffs obtained only a small fraction of what they originally sought."); SAS v. Trintex, 709 F. Supp. 455, 461 (S.D.N.Y. 1989) (citing Riverside v. Rivera, 477 U.S. 561, 585, (1986) (Powell, J., concurring in judgment) ("Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.").

---

[27] Defendants offered and plaintiffs agreed that each plaintiff would keep their compensatory time that was in their banks as of February 28, 2009 and that it would not be converted to cash. The compensatory time was valued at approximately $281,000.

[28] Only sixteen plaintiffs will be paid more than $2,000 dollars in liquidated damages.

**B.**     **Plaintiffs' Fees Should Be Substantially Reduced Because Of The Limited Quality Of The Relief Obtained.**

In considering the reasonableness of the fee award, courts should also consider the quality of the relief afforded. <u>Farrar</u> 506 U.S. at 114. In determining the quality of the relief, courts assess whether plaintiffs have achieved the main objective of their case. <u>See</u> <u>Barfield</u> 537 F.3d at 152. "The degree of plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of the reasonable fee." <u>Lide v. Abbott House</u>, 2008 U.S. Dist. LEXIS at *6 (S.D.N.Y. 2008). Where the degree of success is limited a "percentage reduction of counsel's fees is warranted." <u>Id</u>. at *7.

In <u>Abrahamson v. Board of Educ.</u>, 374 F.3d 66, 69-70 (2d Cir. 2004), plaintiffs sued to invalidate a provision in a collective bargaining agreement as violative of the Age Discrimination in Employment Act ("ADEA"). <u>Id</u>. at 69. The provision offered teachers, who became eligible for retirement after the plaintiffs, a beneficial option that was not available to plaintiffs. <u>Id</u>. at 70. The plaintiffs' main objective was an order making this option available to them. <u>Id.</u> at 71. Although plaintiffs prevailed because the option was found to violate the ADEA, the quality of the relief afforded was decidedly limited because the school district was permitted to cease offering the option altogether. <u>Id</u>. at 77. As a result of the limited qualitative success of the relief, the court authorized a reduction of the attorneys' fees. <u>Id</u>. at 79.

In <u>Barfield</u>, a nursing assistant sought overtime pay under the FLSA on behalf of herself and a class of temporary health care workers. 537 F.3d at 136. After a hearing, the district court declined to certify the suit as a collective action. <u>Id</u>. at 138. While Barfield ultimately prevailed on her own claim, the district court applied a 50% reduction to the lodestar figure due to plaintiff's failure to certify the suit as a collective action. <u>Id</u>. at 140. Explaining that the degree of success obtained was "the most critical factor" in affixing fees, the Second

Circuit affirmed this reduction. <u>Id.</u> at 152. As in <u>Abrahamson</u> and <u>Barfield,</u> plaintiffs here have obtained limited qualitative success. Plaintiffs have only prevailed on one claim: the failure to pay cash O/T claim. But their claims concerning a failure to pay overtime, or the denial of use of their compensatory time were dismissed with no relief. In this context, an across the board reduction is warranted.[29]

**POINT IV**

**PLAINTIFFS' REQUEST FOR COSTS SHOULD BE DENIED.**

The fee applicant has the burden of establishing the reasonableness of the expenses it seeks to recover and must provide the court "a detailed accounting of the expenses which ties the purported expenses with a specified legal product." <u>Monaghan v. SZS 33 Assocs., L.P.</u> 154 F.R.D 78 *86 (S.D.N.Y. 1994) (citing <u>F.H. Krear & Co. v. Nineteen Named Trustees,</u> 810 F.2d 1250, 1269 (2d Cir. 1987)). Further, Local Civil Rule 54.1 of this court requires that "[b]ills for the costs shall be attached as exhibits." As set forth herein, despite their request for costs in an amount of $162,532.38, plaintiffs have failed to submit any bills, invoices, retainer agreements, or any support for their cost application. Where, as here, plaintiffs have failed to provide suitable documentation to substantiate their costs, this court may decline to award the requested costs. <u>Prot. One Alarm Monitoring</u>, 553 F.Supp 2d 201, 210 (E.D.N.Y. 2008).

**A.    Litigation Support From Consultants**

LBB&S and DC 37 seek expenses of $107,498.47 for "Expert/Consultant" services. However, plaintiffs do not even provide the most basic of information, such as the

---

[29] Where claims are pursued, yet abandoned, the Second Circuit has found that abandonment of claims is an appropriate factor to be taken into account in reducing a fee award. <u>See</u>, <u>Green v. Torres</u>, 361 F.3d 96 (2d Cir. 2004); <u>Hensley</u>, 461 U.S. at 436. Plaintiffs withdrew their "conversion" claim and thus there should be a further reduction in the award.

name of the individual(s) for whose service they seek reimbursement or a general description of the nature of the service alleged to have been provided by the retained consultant/expert. Thus, by failing to identify the provider and the nature of the service provided, plaintiffs have failed to establish that the provider's service was compensable.[30] Moreover, plaintiffs' failure to provide the billing statement(s)/invoice(s) associated with the provider precludes defendants and this court from assessing the reasonableness of the claimed expense. As such, these claimed expenses must be denied. Rozell, 576 F. Supp. 2d at 540.

## B.    Copying, Research And Online Search

LBB&S seeks $15,711.50 for "Photocopying/Duplication."[31] However, the firm does not provide any information regarding the number of pages copied but LBB&S claims that they charge $0.25 per page, which is unreasonable. Robinson v. City of New York, 2009 U.S. Dist. LEXIS 89981, at *36 (S.D.N.Y. Sept. 29, 2009) (noting counsel's failure to justify a substantial charge of 30 cents per page, "where the recent 'going rate' in this district is 10 cents per page"). Moreover, LBB&S seeks $4,116.96 for "Lexis Research" and $1,174.56 for "Westlaw Research," for a total of $5,291.52. Defendants have already established the excessive nature of the research done in this case. See Point II, C supra. Thus, any costs associated with this research should be significantly reduced. Finally, LBB&S seeks $893.39 for "Online Search," claiming that cost was incurred in locating plaintiffs. Defendants should not be charged for plaintiffs' failure to keep in contact with their counsel.

---

[30] Plaintiffs designated expert, Dr. Louis Lanier as their expert. However, plaintiffs have failed to provide Dr. Lanier's hourly rate and the amount of time he allegedly spent determining damages in this action. Such a deficiency in the support submitted should be fatal to plaintiffs' claim. See Guo Xing Cao v. Chandara Corp., 2001 U.S. Dist. LEXIS 8631, at *18 (S.D.N.Y. June 27, 2001).

[31] LBB&S also seeks $588.54 for "Reproduction/Copies" and $125.00 for "Professional Services." However, they fail to give even the most basic description of what these "costs" are for. Without such information, defendants and the Court cannot determine the reasonableness of the costs.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for attorneys' fees and costs should be reduced both as to rates and hours as described herein.

Dated:      New York, New York
               October 20, 2009

MICHAEL A. CARDOZO
Corporation Counsel of the
  City of New York
*Attorney for Defendants*
100 Church Street, Room 2-190
New York, New York 10007
(212) 788-0894
dvoigt@law.nyc.gov

By: _____
      DIANA GOELL VOIGT
      Senior Counsel

Emily Califano,
Special Assistant Corporation Counsel

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

CYNTHIA SAUNDERS, et al.,

                                        Plaintiffs,                    **DECLARATION**

        - against -                                                    07 Civ. 0830
                                                                       (SAS)(KNF)
CITY OF NEW YORK AND THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                                        Defendants.

-------------------------------------------------------------------------x

        Diana Goell Voigt, declares, pursuant to 28 U.S.C. § 1746 and subject to the
penalties of perjury, that on October 20, 2009, she caused a true and correct copy of the
**Defendants' Memorandum of Law In Opposition to Plaintiffs' Motion for Attorneys' Fees
and Costs,** dated October 20, 2009, to be served upon:

                        Ivan D. Smith, Esq.
                        Maureen Stampp, Esq.
                        Lewis Brisbois Bisgaard & Smith
                        199 Water Street, Suite 2500
                        New York, New York 10038
                        ismith@lbbslaw.com
                        mstampp@lbbslaw.com


by regular mail and email, directed to same at the above address.

Dated:          New York, New York
                October 20, 2009

                                        Diana Goell Voigt
                                        Senior Counsel
                                        100 Church Street, Rm. 2-190
                                        New York, New York  10007
                                        (212) 788-0894

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CYNTHIA SAUNDERS, et al.,

Plaintiffs,

- against -

CITY OF NEW YORK AND THE NEW YORK
CITY DEPARTMENT OF EDUCATION,

Defendants.

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-190*
*New York, N.Y. 10007*

*Of Counsel: Diana Goell Voigt*
*Tel. No.: (212) 788-0894*